2000 OK CIV APP 70

**J. Patrick CARTER, Plaintiff/Appellee,**

v.

**Edith L. JACKSON, a/k/a "Bunny" Jackson, Defendant/Appellant,**

**Steve Wallace, and Cedar Enterprises, L.L.C., Defendants.**

**No. 91,665.**

Court of Civil Appeals of Oklahoma, Division No. 3.

February 4, 2000.

As Modified, on Grant of Rehearing in Part, April 4, 2000.

Edith L. Jackson, Tulsa, Oklahoma, Pro se.

Tony Jack Lyons, Pryor, Oklahoma, For Appellee.

BUETTNER, Presiding Judge:

¶1 Defendant/Appellant Edith L. Jackson, a/k/a "Bunny" Jackson (Jackson), seeks review of the trial court's order overruling her objections to jurisdiction and venue in an action commenced by Plaintiff/Appellee J. Patrick Carter (Carter) to enjoin sale of, and determine the parties' respective interests in, certain personal property, a houseboat. In the main, Jackson complains the trial court erred in denying her challenges to jurisdiction and venue, the parties living in Tulsa County, Oklahoma, and the subject personal property located at all times pertinent in Craig County, Oklahoma. Having reviewed the record before us, we are constrained to say that the trial court erred in finding venue was proper in the District Court of Mayes County as to Jackson, and hold the orders and judgment of the trial court should be reversed insofar as they relate to Jackson.

¶2 Defendant Steve Wallace (Wallace) owned Defendant Cedar Enterprises, L.L.C., a limited liability corporation (Cedar). Cedar and Carter owned a sixty-foot houseboat moored on Grand Lake o' Cherokees in northeastern Oklahoma. Jackson, apparently having some personal and/or business relationship with Wallace, allegedly paid maintenance, storage and insurance costs on the boat. Wallace granted Jackson a security interest in the boat to cover such payments, and Jackson filed the security agreement in Mayes County.

¶3 Wallace ostensibly repaid Jackson for his proportionate share of the expenses, but Carter did not. The houseboat then moored at a Grand Lake marina—by legal description apparently located in Craig County, but in fact located on the boundary between Mayes County and Craig County—Jackson sought to foreclose her security interest in the boat by sale, posting notices in the vicinity describing the location of the boat in Mayes County.

¶4 Carter then commenced the instant action May 9, 1996 in Mayes County to enjoin the sale, and obtained a temporary restraining order. The defendants named were Jackson, Steve Wallace, and Cedar Enterprises, L.L.C. Carter alleged that all parties were residents of Tulsa County. The only connection alleged with Mayes County was that the personal property was located in Mayes County and that Jackson was going to take action in Mayes County.

¶5 Jackson objected to jurisdiction and venue of the Mayes County District Court, asserting all parties' domicile in Tulsa County (see 12 O.S.1991 § 139[1]), and actual physical location of the boat in Craig County (see 12 O.S.1991 § 131[2]). At the hearing on

---

1. Section 139 provides in part: Every other action must be brought in the county in which the defendant or some one of the defendants resides or resided at the time the claim arose, or may be summoned; . . . .

2. Section 131 provides in part: Actions for the following causes must be brought in the county in which the subject of the action is situated, . . . :
  1st For the recovery of real property, . . . .
  2nd For the partition of real property.

Jackson's objections,. all the parties concentrated on the location of the boat. Jackson presented testimony and evidence arguably establishing location of the marina in Craig County, erroneous filing of the security agreement in Mayes County, subsequent release thereof, and refiling of the security agreement in Craig County. Carter presented testimony and evidence arguably establishing location of the marina offices in Craig County, but actual physical mooring of the boat in Mayes County.

¶ 6 On June 3, 1996, by written order, the trial court overruled Jackson's challenge to jurisdiction and venue. By way of a motion to dismiss filed June 13, 1996, Jackson again objected to venue, among other things. By order dated August 27, 1996, the trial court again held venue proper.

¶ 7 Jackson subsequently filed an answer to Carter's petition, objecting to venue, and asserted a counterclaim for recovery of the sums she paid, and the trial court ultimately granted a money judgment to Jackson. Upon a partition sale of the boat—to Carter as high bidder over Jackson—the court clerk apparently tendered, and Jackson apparently cashed, vouchers representing proceeds of the sale and satisfying her judgment.[3] Jack-

3rd For the sale of real property....
4th To quiet title, ... or to enforce or set aside an agreement to convey real property.
5th For all damages to land, crops, or improvements thereon, action must be brought in the county where the damage occurs.

3. The record on appeal does not include any evidence concerning the tender or negotiation of these vouchers.

4. On April 27, 1998, Jackson pro se commenced an action in the Supreme Court, styled "Emergency Appeal and Restraining Order Request," assigned Case No. 91,181. The Supreme Court treated Jackson's request as an emergency motion for stay and denied relief by order dated April 28, 1998. By order dated June 29, 1998, and apparently upon consideration of the entire District Court record (subsequently returned to the District Court), the Supreme Court *sua sponte* dismissed Case No. 91,181 as a premature appeal without prejudice to commencement of a "new appeal" "within 30 days of filing of order confirming sheriffs sale or within 30 days of the date of this dismissal order whichever is later."

On July 20, 1998, Jackson filed an "amended appeal petition." By order of July 22, 1998, the

son now appeals,[4] again asserting the Mayes County trial court erred in assuming jurisdiction to adjudicate the competing claims to the boat actually located in Craig County.

■ ¶ 8 Three elements are essential to the validity of a district court order: "First, jurisdiction of the person; second, jurisdiction of the subject-matter; third, judicial power to render the particular judgment." *Union Indem. Co. v. Saling,* 166 Okla. 133, 26 P.2d 217, 224–225 (1933); *Pettis v. Johnston,* 78 Okla. 277, 190 P. 681. "Since 1967, the District Courts of Oklahoma are courts of 'unlimited original jurisdiction,' having authority over 'all justiciable matters.' Oklahoma Constitution, Art. VII, § 7." *Rodriguez v. Moinian,* 1990 OK CIV APP 55, ¶ 7, 798 P.2d 232, 233–234.

■ ¶ 9 There is consequently little doubt that if *venue* was otherwise proper in Mayes County, the trial court in Mayes County, as a court of unlimited original jurisdiction, clearly possessed general *subject matter jurisdiction* to adjudicate the parties' competing claims, *personal jurisdiction* over the parties to the controversy, and the *authority to grant appropriate relief* by sale of the secured property on proof of the legal requisites therefor. In this respect:

Supreme Court ordered the amended petition stricken as improperly filed after the previous dismissal, and directed "that if appellants wish to seek review of a subsequently filed final order in the district court, appellants must commence a new appeal ... not later than July 29, 1998." On July 29, Jackson commenced this appellate action by document styled "New Appeal," not in conformity with Supreme Court Rules 1.25(a). and 1.301, Form 5, 12 O.S., Ch. 15, App. 1, alleging "manipulation of the Mayes County [judicial] system" by counsel for Carter, and error of the trial court in rejection of evidence argued to show jurisdiction and venue in Craig County. Jackson's initial designation of record failed for lack of specificity, and—by order of the Supreme Court—Jackson filed an amended designation of record, but the record subsequently designated by Jackson did not contain any of the dispositive orders of which she complained on appeal.

By subsequent order, we directed Jackson to cure the several deficiencies of the appellate record. Jackson filed an amended petition in error in form with the challenged dispositive orders attached, and by supplemental completion of record, we now have a sufficiently complete appellate record before us to rule on the merits of this appeal.

... [V]enue is not a jurisdictional requirement, but is merely one of procedure. (Citations omitted.)

The distinction between "jurisdiction" and "venue" is plainly established. "Jurisdiction" is a term of comprehensive import. It concerns and defines the power of judicatories and courts. It embraces every kind of judicial action touching the subject of the action, suit, petition, complaint, indictment, or other proceeding. It includes power to inquire into facts, to apply the law, to make decision, and to declare judgment. "Venue" in its modern and municipal sense relates to and defines the particular county or territorial area within the state or district in which the cause or prosecution must be brought or tried. It commonly has to do with geographical subdivisions, relates to practice or procedure, may be waived, and does not refer to jurisdiction at all. (Citation omitted.)

*Robinson v. Oklahoma Employment Sec. Com'n*, 1997 OK 5, ¶ 8, 932 P.2d 1120, 1123.

 ¶ 10 On the question of proper venue, Jackson presented testimony and evidence arguably establishing location of the marina (where the boat was moored and "kept") in Craig County, while Carter presented testimony and evidence arguably establishing actual physical mooring of the boat in Mayes County. Having been misdirected by the parties, the trial court considered the evidence and viewed the site, and determined, in essence, that the boat was actually located in Mayes County as to there render venue proper.[5] However, neither party provided the trial court or this court citation to any venue statute that establishes venue based upon the location of personal property. Jackson cites § 139, but that statute only applies to real property. Carter cites no venue statute at all. Absent a statute that allowed suit in Mayes County, defendants were entitled, in accordance with § 139, to be sued in the county of their residence. And, considering the time that has passed and the energy expended on this matter, we might be tempted to rely on the principal of "invited error." However, in addition to misunderstanding § 131, Jackson continuously objected to venue claiming her right under § 139 to be sued where she resided.

¶ 11 We further note that this lengthy litigation has been unnecessarily complicated and extended by the acrimony of the parties. The briefs of both parties contain inappropriate arguments, language, and accusations. We acknowledge the extra-record argument that Jackson has received all that she requested in her counterclaims. We can only hope that this is true and the litigation can be deemed moot should this matter be re-filed.[6]

¶ 12 The orders of the trial court denying Jackson's various challenges to jurisdiction and venue are therefore REVERSED. This case is remanded to the trial court with instructions to dismiss the claim against Jackson based upon improper venue.

¶ 13 GARRETT, J., and JOPLIN, J., concur.

---

5. We note that the record before us does not bear out Jackson's allegations of "fraud" practiced by Carter, his counsel and the trial court during the course of these proceedings as to undermine the trial court's determination of venue.

6. Where venue is improper, the court is without authority to hear and determine the case; reversal is required and the action must be dismissed. *Lowrance v. Patton*, 1985 OK 95, 710 P.2d 108, 113.