2001 OK CIV APP 37

**Juanita DEERINWATER,
Plaintiff/Appellant,**

**v.**

**CIRCUS CIRCUS ENTERPRISES, d/b/a
Gold Strike Casino Resort,
Defendant/Appellee.**

**No. 94,537.**

Court of Civil Appeals of Oklahoma,
Division No. 2.

March 6, 2001.

Bill M. Shaw, Shaw, Crutchfield & Shaw, Claremore, OK, for Appellant.

Richard M. Eldridge, Michael F. Smith, Rhodes, Hieronymus, Jones, Tucker & Gable, P.L.L.C., Tulsa, OK, for Appellee.

COLBERT, JUDGE:·

¶1 Juanita Deerinwater appeals the trial court's order refusing to vacate a prior order dismissing her suit against Circus Circus Enterprises for lack of in personam jurisdiction.[1] The issue on appeal in this action involving personal injury is whether the trial court abused its discretion in refusing to vacate the prior order. Based upon our review of the record and applicable law, we find that the court did not err and affirm.

## BACKGROUND

¶2 In February 1999, Deerinwater, an Oklahoma resident, visited the Gold Strike Casino Resort (Casino), owned by Circus Circus. Casino is located in Tunica, Mississippi, and Circus Circus is a Mississippi corporation. Deerinwater alleged that, on or about February 27, 1999, a fire alarm sounded and all Casino guests were instructed to evacuate their rooms. Her room was located on the nineteenth floor and, while descending the stairs, she fell, twisting her ankle and knee. She incurred numerous medical bills as a result of her injuries.

¶3 In September 1999, Deerinwater filed a negligence action against Circus Circus in Rogers County District Court. She argued that Oklahoma could assert jurisdiction over Circus Circus because the corporation advertises in Oklahoma via flyers, pamphlets, and commercials. She also argued that Oklahoma could assert jurisdiction over Circus Circus because it had sent her and several other Oklahoma residents targeted mailings advertising special promotions at Casino.[2]

¶4 Circus Circus moved to dismiss the case for lack of in personam jurisdiction. Attached to its motion and brief is the affidavit of its corporate counsel, denying Oklahoma's jurisdiction on the following grounds: (1) Circus Circus does not have, nor has it ever had, any employees, officers, or agents permanently engaged in business in Oklahoma; (2) Circus Circus does not own, operate, or control any subsidiary or affiliate companies domiciled in Oklahoma, nor has it ever done so; (3) Circus Circus does not regularly or continuously do business in Oklahoma, nor is it authorized to do so; (4) Circus Circus does not maintain records, operate bank accounts, real property, or personal property in Oklahoma and has never done so; (5) Circus Circus does not pay income taxes or file tax returns in Oklahoma, nor does it hold any Oklahoma vehicle licens-

---

1. Circus Circus stated in its supplement to the record that its corporate name is actually Circus Circus Mississippi, Inc. Circus Circus Mississippi, Inc., is a wholly owned subsidiary of Circus Circus Enterprises (a.k.a. Mandalay Resort Group), a Nevada corporation. Therefore, our references to Circus Circus throughout this opinion are to Circus Circus Mississippi, Inc.

2. Deerinwater also argued the court could assert jurisdiction pursuant to 12 O.S.1991 § 187, the statute governing venue in actions against nonresident defendants. However, section 187 is not relevant to a determination of in personam jurisdiction.

> The distinction between "jurisdiction" and "venue" is plainly established. "Jurisdiction" is a term of comprehensive import. It concerns and defines the power of judicatories and courts. It embraces every kind of judicial action touching the subject of the action, suit, petition, complaint, indictment, or other proceeding. It includes power to inquire into facts, to apply the law, to make decision, and to declare judgment. "Venue" in its modern and municipal sense relates to and defines the particular county or territorial area within the state or district in which the cause or prosecution must be brought or tried. It commonly has to do with geographical subdivisions, relates to practice or procedure, may be waived, *and does not refer to jurisdiction at all.*

Carter v. Jackson, 2000 OK CIV APP 70, ¶9, 10 P.3d 237, 240 (quoting *Robinson v. Oklahoma Employment Sec. Comm'n*, 1997 OK 5, ¶8, 932 P.2d 1120, 1123) (emphasis added).

es or registrations; (6) Circus Circus does not hold corporate meetings in Oklahoma; (7) Circus Circus does not do mass mailing solicitations in Oklahoma; and (8) Circus Circus does not consent to Oklahoma's jurisdiction. The affidavit acknowledged that Circus Circus sends letters regarding special promotions directly to those individuals who have visited Casino in the past. However, it made no mention of other forms of advertising.

¶ 5 After a hearing on the matter, the trial court entered an order on December 2, 1999, sustaining the motion to dismiss. Deerinwater then filed a motion to vacate the court's order on December 13, 1999, pursuant to 12 O.S. Supp.2000 § 1031.1(B), which allows a court to vacate a judgment upon the motion of a party if the motion is made no later than thirty days after the judgment has been filed with the court clerk. In a subsequent order filed March 14, 2000, the trial court did not specifically rule on the motion to vacate, but effectively refused to vacate the prior order by again granting the motion to dismiss. Deerinwater appeals.

## STANDARD OF REVIEW

¶ 6 Deerinwater filed the motion to vacate to request that the court correct certain scrivener's errors in its order. She also requested "that the Court should reconsider its judgment in that it is contrary to Oklahoma Law." Although the motion was specifically brought under section 1031.1, Circus Circus apparently interpreted the motion as a combined motion to vacate and motion to reconsider. Therefore, even though the motion includes language requesting that the court reconsider its order, this court will treat the motion as one to vacate.

¶ 7 In *Schepp v. Hess*, 1989 OK 28, 770 P.2d 34, the Oklahoma Supreme Court addressed motions brought pursuant to section 1031.1. Motions filed more than ten but within thirty days after the court's order was filed invoke a court's "term-time" power.[3] Trial judges exercise term-time power with a very broad discretion which is virtually unlimited. *Id.* at ¶ 9, 770 P.2d at 38. Section 1031.1 does not restrict the exercise of term-time power to any specific ground. *Id.* at ¶ 8, 770 P.2d at 38.

¶ 8 "The standard of review of a trial court's ruling either vacating or refusing to vacate a judgment is abuse of discretion." *Ferguson Enters., Inc. v. H. Webb Enters., Inc.,* 2000 OK 78, ¶ 5, 13 P.3d 480, 482. An abuse of discretion involves a clearly erroneous conclusion, against the logic and effect of the facts presented. See *Oklahoma Turnpike Auth. v. Horn,* 1993 OK 123, ¶ 6, 861 P.2d 304, 306.

## DISCUSSION

¶ 9 The trial court's refusal to vacate its order dismissing the suit for lack of in personam jurisdiction is not clearly erroneous in light of the facts presented. Oklahoma's long-arm statute, 12 O.S.1991 § 2004(F), provides that "[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." In *Hough v. Leonard,* 1993 OK 112, ¶ 7, 867 P.2d 438, 442, the Oklahoma Supreme Court explained that section 2004(F) is a codification of the court's holding in *Fields v. Volkswagen of America, Inc.,* 1976 OK 106, ¶ 6, 555 P.2d 48, 52, that the intent of Oklahoma's long-arm statute is to extend the jurisdiction of Oklahoma courts over non-residents to the outer limits permitted by the Oklahoma Constitution and the due process requirements of the United States Constitution.

¶ 10 Those outer limits were defined by *Marathon Battery Co. v. Kilpatrick,* 1965 OK 212, 418 P.2d 900, which adopted the standard established by *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In *International Shoe,* the United States Supreme Court stated that due process "requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory

---

**3.** "Term-time" power arose from the common law concept that trial courts retain plenary control over their terminal decisions for a limited period of time. The power became known as "term-time" because, historically, it could be invoked at any time during the term of court in which the judgment was rendered. *Schepp v. Hess,* 1989 OK 28, ¶ 7, 770 P.2d 34, 37–38.

of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Id.* at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). The Supreme Court cautioned, however, that the due process clause protects a non-resident defendant's liberty interest in not being subject to binding judgments in a state with which it has established no meaningful "contacts, ties or relations." *Id.* at 319, 66 S.Ct. at 160.

¶ 11 In personam jurisdiction may be either general or specific. A court may assert general jurisdiction over a non-resident defendant if the defendant has maintained "continuous and systematic contacts" with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–16 & n. 9, 104 S.Ct. 1868, 1872–73 & n. 9, 80 L.Ed.2d 404 (1984). The facts required to establish general jurisdiction must be "extensive and persuasive." *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 589 (3d Cir.1982). This is a rigorous burden, and it ensures that a non-resident will be treated as fairly as a resident of the forum in terms of amenability to suit there. See *Giangola v. Walt Disney World Co.,* 753 F.Supp. 148, 154 (D.N.J.1990). When general jurisdiction is found to exist, all causes of action against the defendant, whether or not related to the defendant's activities in that state, may be pursued in its courts.

¶ 12 A finding of specific jurisdiction involves a two-step process. First, a court must determine whether the non-resident defendant had the requisite minimum contacts with the forum such that the defendant should have "reasonably anticipate[d] being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). What constitutes minimum contacts varies with the "quality and nature of the defendant's activity." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Generally, the minimum contacts requirement is satisfied when the cause of action relates to or arises out of the defendant's forum-related activities. *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 374 (5th Cir.1987).

¶ 13 Next, assuming that minimum contacts have been established, a court may inquire as to whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (quoting *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 160). The assertion of in personam jurisdiction comports with "fair play and substantial justice" if it is reasonable to require the defendant to defend suit in the forum. *World Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564.[4] Circus Circus argues that Oklahoma can constitutionally assert neither general nor specific jurisdiction. We agree.

### General Jurisdiction

¶ 14 The leading United States Supreme Court case discussing general jurisdiction is *Helicopteros,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404. In *Helicopteros,* the Texas Supreme Court had ruled that a Columbian corporation had sufficient contacts with Texas to allow the exercise of jurisdiction. The corporation's contacts with Texas included sending its chief executive officer to Houston to negotiate a contract; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from a Texas corporation; and sending personnel for corporate training in Texas. The corporation had no place of business in Texas and had never been licensed to do business in Texas. The Supreme Court found that these contacts were not sufficient to establish general jurisdiction. *Id.* at 418–19, 104 S.Ct. at 1874.

---

4. To determine reasonableness, a court considers the following factors: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering substantive social policies. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

¶ 15 Here, Circus Circus's contacts with Oklahoma are less substantial than those of the non-resident corporation in *Helicopteros*. Deerinwater asserts that Circus Circus is subject to the jurisdiction of Oklahoma courts because Circus Circus sent targeted mailings to her and other Oklahoma residents and because the corporation advertises in Oklahoma. Regarding Circus Circus's advertising activity in this state, Deerinwater claims she has "viewed a myriad of Defendant's television ads via Oklahoma television programming, heard a multitude of radio advertisements aired via Oklahoma radio, and read many newspaper articles, all of which are designed to induce citizens of Oklahoma to recreate at Defendant's Casino in Tunica, Mississippi."

¶ 16 These activities of Circus Circus do not amount to "continuous and systematic contact." Deerinwater alleges she has continuously received Circus Circus's mailings, yet she is not specific as to how many mailings she has received or the period of time over which she has received them. Although the record contains letters sent by Circus Circus to several Oklahoma residents, it contains only a few letters sent to Deerinwater and they all appear to have been sent in May 1999.

¶ 17 Likewise, Deerinwater's assertion that Circus Circus has conducted extensive advertising does not establish that Circus Circus's contact with Oklahoma was systematic and continuous. She has made a blanket assertion about Circus Circus's advertising activity, but has provided no evidence of it. She is not specific as to the amount or frequency of the advertising and does not estimate the cost of the advertising or the amount of revenue Circus Circus receives from its advertising in this state.

¶ 18 A Nebraska court of appeals confronted a similar situation in *Dunham v. Hunt Midwest Entertainment, Inc.*, 2 Neb.App.

969, 520 N.W.2d 216 (1994). There, Nebraska residents sued a Missouri amusement park for injuries they sustained on an amusement ride in Missouri. The evidence showed that the amusement park engaged in radio and television advertising in Omaha, Nebraska, for a period of ten years, and that the park received substantial revenue from Nebraska residents. One of the plaintiffs stated that, prior to her visit to the amusement park, she had heard advertisements regarding discount tickets. The advertisements stated that the discount tickets were available only if the customer had a coupon, which could be obtained at an Omaha grocery store. The plaintiff testified that she would not have visited the amusement park had she not received a discount.

¶ 19 Relying on *Helicopteros*, the court in *Dunham* held that the amusement park's activities in Nebraska were insufficient to establish that it had continuous and systematic business contacts with Nebraska. *Id.* at 222. The court reasoned that the plaintiffs' evidence was not specific as to the amount or frequency of the amusement park's advertising in Nebraska, and the plaintiffs did not produce any raw numbers or percentages of revenue derived from Nebraska residents. On the other hand, the amusement park presented evidence that it was not authorized to do business in Nebraska, had no employees there, and did not maintain an office in Nebraska. *Id.* We are in accord with the reasoning of the Nebraska court.

¶ 20 The Oklahoma Supreme Court has emphasized that, in cases involving jurisdictional disputes, the burden of proof is upon the party asserting that the state has jurisdiction. Therefore, this court will not infer general jurisdiction; it must affirmatively appear from the record. See *Roberts v. Jack Richards Aircraft Co.*, 1975 OK 72, ¶ 6, 536 P.2d 353, 354.[5] Deerinwater did not pres-

---

5. An example of a case in which an Oklahoma court found the plaintiff's proof sufficient to establish general jurisdiction is *Ferrell v. Prairie Int'l Trucks, Inc.*, 1997 OK 6, 935 P.2d 286, where the plaintiff's evidentiary materials were specific as to the non-resident defendant's advertising, stating the time frame during which defendant advertised in Oklahoma papers and pro-

viding a description of the advertisements. The evidence also showed that the defendant negotiated the sale of a truck over the phone with an Oklahoma resident and knew the truck would be used in Oklahoma. The evidence further showed that the defendant entered into an installment contract with the Oklahoma plaintiff, thereby creating a continuing obligation with the plaintiff

ent sufficient evidence to establish general jurisdiction over Circus Circus.

## Specific Jurisdiction

¶ 21 As we have previously stated, to establish specific jurisdiction, it is critical that the plaintiff's injury arise out of the defendant's forum-related activities. To state it another way, "a plaintiff does not establish specific jurisdiction by attempting to establish the continuous and systematic activities needed for general jurisdiction, and failing." *Dunham*, 520 N.W.2d at 227. There must be a substantial connection between the injury and the defendant's activities.

¶ 22 A leading Oklahoma case which discusses the "arising out of" requirement is *Roberts*, 1975 OK 72, 536 P.2d 353. In Roberts, the plaintiff brought a wrongful death suit in an Oklahoma court against two former owners of an aircraft which crashed, killing the plaintiff's decedent. The defendants were non-resident corporations. The plaintiff sought to prove jurisdiction over the corporations by arguing that their acts of selling airline tickets through Oklahoma travel agents and advertising on television were sufficient to satisfy Oklahoma's long-arm statute.

¶ 23 The *Roberts* court rejected the plaintiff's argument, stating that the injury to plaintiff's decedent did not arise out of the corporations' activities in Oklahoma. "Here the cause of action as to [the defendants]

appears from the record ... to arise out of their individual acts during their separate ownership and separate sale of the aircraft some time prior to the crash. All of this occurred outside the State of Oklahoma. These are not the same acts of [defendants] alleged to confer jurisdiction in personam...." *Id.* at ¶ 10, 536 P.2d at 355. The court found no relationship between the facts establishing the defendants' liability and the facts establishing the defendants' activities in Oklahoma. *Id.*[6]

¶ 24 Federal courts have also addressed the relationship of a plaintiff's injury and a non-resident defendant's activities in the forum. In *Wims v. Beach Terrace Motor Inn, Inc.*, 759 F.Supp. 264 (E.D.Pa.1991), the plaintiffs, Pennsylvania residents, filed suit in a Pennsylvania court against a New Jersey corporation which operated a motor inn in New Jersey. One of the plaintiffs claimed she was injured while staying at the defendant's motor inn. The suit was later transferred to federal court, and the defendant moved to dismiss for lack of in personam jurisdiction.

¶ 25 The plaintiffs argued that specific jurisdiction existed over the non-resident defendant as a result of the defendant's mailing of nearly six thousand promotional brochures to prospective patrons. The brochures were mailed on an annual basis to potential customers in several eastern states, including Pennsylvania. The injured plaintiff claimed she made a reservation at the motor inn after

---

in Oklahoma. The court found the defendant's contacts with Oklahoma sufficient to establish both general and specific jurisdiction. *Id.* at ¶ 12 n. 2, 935 P.2d 286, 288 n. 2.

A case in which a Utah court found the proof sufficient to establish general jurisdiction is *Buddensick v. Stateline Hotel, Inc.*, 972 P.2d 928 (Utah Ct.App.1998), where a Utah plaintiff was injured when she slipped and fell while standing in line at a casino buffet in Nevada. The plaintiff filed a complaint against the Nevada corporation in a Utah court. The corporation's activities in Utah were numerous. Not only did the corporation advertise its casino in Utah, it contracted for goods and services in Utah; utilized a Utah insurance agent and law firm; leased property in Utah; maintained post office boxes in Utah; and had a Utah cellular telephone number, in addition to a regular telephone number and six fax numbers. The court held that the corporation's contacts with Utah were substantial and continuous. *Id.* at 931. The proof provided by Deerinwa-

ter here does not equate to that provided by the plaintiffs in these two cases.

**6.** Another Oklahoma case discussing the "arising out of" requirement is *Glidewell Motors, Inc. v. Pate*, 1978 OK 46, 577 P.2d 1290, where two Arkansas corporations, which had been named in a tort action initiated by an Oklahoma bank, argued that Oklahoma could not assert jurisdiction over them because they did not do business or solicit business in Oklahoma. The defendants' contact with Oklahoma consisted of advertising in an Arkansas newspaper that had some circulation in Oklahoma. The bank's alleged injury resulted from the defendants' failure to inform it of certain transactions involving an automobile in which the bank had a secured interest. The court held that any injury sustained by the bank did not arise out of the act of advertising in Oklahoma. *Id.* at ¶ 15, 577 P.2d at 1292.

having read one of the defendant's brochures.

¶ 26 The *Wims* court held that it lacked specific jurisdiction over the defendant. *Id.* at 269. The court noted that the complaint involved an injury that occurred in New Jersey, rather than Pennsylvania, and allegedly resulted from the defendant's negligent conduct in operating its motor inn. The court stated, "[w]hile it is true that the [plaintiffs] might not have visited the motor inn if [the injured plaintiff] had not seen the defendant's brochure, the causal link between the brochures and the injury is simply too attenuated to say that the injury arose from [the defendant's] activities in the Commonwealth of Pennsylvania." *Id.* at 268.

¶ 27 Other federal courts have reached similar conclusions. *See Gorman v. Grand Casino of La., Inc.–Coushatta,* 1 F.Supp.2d 656 (E.D.Tex.1998) (holding that the plaintiff's alleged injury resulting from sexual advances made by a casino's security guard had nothing to do with the marketing scheme of the non-resident casino);[7] *Dirks v. Carnival Cruise Lines,* 642 F.Supp. 971 (D.Kan.1986) (holding that the duty of a non-resident cruise line to exercise due care in the treatment of its passengers did not arise until the plaintiff became a passenger on its ship).

¶ 28 Based on the aforementioned authorities, we find that Oklahoma cannot assert specific jurisdiction over Circus Circus because Deerinwater's alleged injury did not arise out of its activities in Oklahoma. Her cause of action is based on the alleged failure of Circus Circus to exercise due care toward its patrons. The duty which Circus Circus owed Deerinwater arose in Mississippi, when she became a guest of Casino. The duty did not originate from its activities in Oklahoma.

¶ 29 Deerinwater asserts in her pleadings that she was "persuaded by Casino through the use of advertisements, mailings and promise of discounts to come to Mississippi, stay at the Casino and enjoy its recreational facilities and resort." Even if Circus Circus's

advertising "caused" her to visit Casino in Mississippi, it cannot be said that her purported injuries were "caused by" the advertising. Her injuries are simply too attenuated from Circus Circus's activities in Oklahoma to establish in personam jurisdiction. We conclude that Circus Circus's contacts with Oklahoma are not of a quality and nature such that it should have reasonably anticipated having to defend a suit here. Because the minimum contacts requirement has not been satisfied, we need not consider the reasonableness factors set forth in *World–Wide Volkswagen.*

## CONCLUSION

¶ 30 Oklahoma cannot exercise general jurisdiction over Circus Circus because Deerinwater has not shown that its activities in Oklahoma are continuous and systematic. Specific jurisdiction cannot be established because Deerinwater's purported injury did not arise out of Circus Circus's contacts with Oklahoma. Having found neither general nor specific jurisdiction, we conclude that the trial court did not abuse its discretion in refusing to vacate its prior order dismissing the suit for lack of jurisdiction.

¶ 31 AFFIRMED.

¶ 32 REIF, V.C.J., and GOODMAN, P.J., concur.

---

7. The *Gorman* court held, however, that general jurisdiction could be established because the defendant's activities in the forum were continuous and systematic. *Gorman v. Grand Casino of La., Inc.–Coushatta,* 1 F.Supp.2d, 656, 659 (E.D.Tex.

1998). We have already determined here that Oklahoma cannot assert general jurisdiction, and we find *Gorman* instructive only on the issue of specific jurisdiction.