2003 OK CIV APP 61

**Bonita Jean GULLO, (now McDaris), Plaintiff/Appellee,**

v.

**Ronald GULLO, Defendant/Appellant.**

**No. 97,556.**

Court of Civil Appeals of Oklahoma, Division No. 4.

June 3, 2003.

Gary D. Underwood, Tulsa, OK, for Plaintiff/Appellee.

Shannon Davis, Tulsa, OK, for Defendant/Appellant.

Opinion by KEITH RAPP, Judge:

¶ 1 The trial court defendant, Ronald Gullo (Father), appeals the trial court decision refusing to vacate an Oklahoma divorce decree on grounds of lack of personal jurisdiction. The decree awarded the trial court plaintiff, Bonita Jean Gullo (Mother), a divorce, child custody, child support, and certain property.

## BACKGROUND

¶ 2 Mother and Father were married in 1989 in Ohio and resided there. They had one child of the marriage born in 1990 in Ohio. They separated in 1994. Mother and child then moved to Oklahoma. Father remained in Ohio.[1]

¶ 3 Mother filed for divorce approximately seven months after coming to Oklahoma. Father was personally served with summons in Ohio in October of 1995. However, he was a resident of Ohio and he did not leave Ohio at any material time. He has never been in Oklahoma. The parties disagree about whether Father was aware of Mother's whereabouts in Oklahoma prior to the divorce—Mother says he knew and she arranged telephone contact with the child; Father says he did not know. The divorce was entered on January 19, 1996, and Mother was awarded custody, property, and child support. Mother's counsel at the time of the divorce testified by affidavit that he mailed a copy of the decree to Father at that time. Father has not disputed this assertion and Father had not appealed the decree.

¶ 4 Subsequently, Mother received financial assistance from the Oklahoma Department of Human Services (ODHS). This agency began collecting child support from Father by wage assignment, without any challenge to jurisdiction by Father. This activity continued for about eleven months until ODHS discovered a Schwab account containing about $9,000.00 belonging to the Father. ODHS levied on the account.

¶ 5 On December 10, 2001, the Father initiated these proceedings to vacate the divorce leading to this appeal by entering a special appearance and filing a motion to dismiss approximately six years after the initial divorce. Father's contention is that the Oklahoma court did not have personal jurisdiction over him, so the decree provisions for child support and property division are void. The Father acknowledged that the court had jurisdiction to award custody and grant the divorce. He does not dispute that he is the father of the child.

¶ 6 The facts in dispute were presented by affidavits, pleadings, and briefs. The Mother alleged that the Father was abusive and that they had discussed and agreed that Mother would return to Oklahoma and could obtain a divorce, if she would not seek support and would not inform anyone of the abuse. Her attorney in the divorce action provided an affidavit stating that he had had mail contact

---

1. Mother apparently originally was from Oklahoma.

with the Father and that Father had agreed to sign a decree, but failed to do so. His affidavit recited that the Mother had informed him of the alleged abuse by the Father and of her reasons for moving to Oklahoma, but his affidavit did not state whether any independent investigation of the facts had been undertaken.

¶ 7 The Mother argued that the Uniform Interstate Family Support Act (UIFSA), in effect when the divorce was granted, established the authority for the Oklahoma court to award child support and exercise personal jurisdiction over the Father. She relied upon 43 O.S. Supp.1994, § 601–201(5) and (8) to establish jurisdiction.[2]

¶ 8 The Father denied the Mother's allegations that they agreed to a move here or that they made any other agreements. The Father asserted that he was unaware of Mother's and child's whereabouts for about one year. He denied negotiating the divorce with Mother's original attorney or having any other contact with her, directly or indirectly. He specifically denied directing or bringing about his child's relocation to Oklahoma from Ohio.

¶ 9 The trial court did not conduct a trial. The parties appeared to be content to have the facts, including the disputed facts, presented in the format noted above. At the hearing on the matter, the trial court discussed the fact that Father had paid, by wage assignment, child support for eleven months without challenge and voiced an opinion that such acts could amount to waiver or estoppel. However, the court apparently did not rest its decision on those equitable principles.[3]

¶ 10 The trial court stated that there was sufficient statutory authority for the decision to deny the motion to vacate. In these re-

marks, the court referred to Mother's brief and her citations to the statutes as discussed above, but without specifying whether subsections 5 or 8, or both, of Section 601–201, would control under the facts of the case. The court denied Father's motion to vacate. Father appeals.

## STANDARD OF REVIEW

¶ 11 This matter presents a question of law concerning an Oklahoma court's jurisdiction under the UIFSA to decree child support in favor of an Oklahoma parent whose child also resides in Oklahoma against a non-resident parent who was personally served a summons outside the State and who has never been in the State of Oklahoma. The appellate court has the plenary, independent and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100 n. 1. Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling. *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Keizor v. Sand Springs Ry. Co.*, 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328.

## ANALYSIS AND REVIEW

### A. *In Personam* Jurisdiction When Divorce/Support Decree Entered.

¶ 12 The parties are in basic agreement that the Constitution requires a minimum contact, yet some contact, with the forum state in order to exercise *in personam* jurisdiction. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Here, of course, it is not the nature and quality of commercial activity

---

**2.** The statute provides:

> In a proceeding to establish, enforce, or modify a support order or to determine parentage, a tribunal of this state may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:
>
> . . . .
>
> 5. The child resides in this state as a result of the acts or directives of the individual;
>
> . . . .

> 8. There is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction.

Mother has not argued that 12 O.S. Supp.1994, § 2004(F) applies.

**3.** This background is taken from the transcript of the hearing. The journal entry denying the motion to vacate the decree does not specify a reason or reasons for the ruling nor does it contain findings of fact.

that must be examined to ascertain whether the state court may exercise jurisdiction. Nevertheless, the minimum contact principle applies. *Kulko v. Superior Court of California*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132 (1978). An essential criterion in all cases is whether the quality and nature of the defendant's activity is such that it is reasonable and fair to require him to conduct his defense in the state notwithstanding that the forum state and the plaintiff have an interest in proceeding in the forum state. *Kulko*, 436 U.S. at 92, 98 S.Ct. at 1696.

¶ 13 The Supreme Court ruled in *Kulko* that mere acquiescence of a divorced father, who resided in New York, to his daughter's desire to live with mother in California did not confer jurisdiction to the California court in a custody dispute. The Court rejected an argument that the father received an economic benefit from California so as to warrant exercise of jurisdiction there. Finally, the Court declared that considerations of fairness and the criterion of minimum contacts do have roles in determining the proper forum. The Court's analysis and reasoning are instructive here.

¶ 14 First, the determinations of reasonableness and what constitutes minimum contacts is not subject to a bright line mechanical test and the facts of each case must be examined and weighed to reach a decision. *Kulko*, 436 U.S. at 92, 98 S.Ct. at 1696. Next, the unilateral acts of a party claiming some relationship with the nonresident cannot, by itself, satisfy the minimum contacts requirement. There must be some "purposeful act" by the nonresident such that the nonresident makes use of the privilege of conducting activities within the forum State. *Kulko*, 436 U.S. at 94, 98 S.Ct. at 1698.

¶ 15 Last, a State's interest in protecting resident children and facilitating child support actions for them is, without more, insufficient to make that State the fair forum.

*Kulko*, 436 U.S. at 100–01, 98 S.Ct. at 1701. The Court accepted the principle that such interests are important, but stated that while the principle may be used to decide which State's laws would apply in the event of a conflict of laws, it may not be used to determine jurisdiction. Nevertheless, the "choice-of-law" function was distinct from the question of authority to exercise personal jurisdiction. *Kulko*, 436 U.S. at 97, 98 S.Ct. at 1700.

¶ 16 The Court, in this regard, distinguished cases arising from commercial activities from cases arising from a domestic relationship with the observation that commercial activities are different in nature than transactions involving domestic affairs. *Kulko*, 436 U.S. at 96, 98 S.Ct. at 1699. The Court thus rejected the contention that the act of agreeing to his daughter's move did cause an "effect" in California justifying *in personam* jurisdiction.[4]

¶ 17 The trial court here appeared to erroneously place controlling emphasis on the public policy element and the State's interest in the child.[5] According to *Kulko*, that emphasis is misplaced and would not suffice to authorize jurisdiction.

¶ 18 The difficulty presented this Court is that the facts of the case under review were not litigated and resolved by the trial court. These facts, upon ultimate determination, such as whether Father "purposely" acted to have his child move to Oklahoma, may indeed take the case out of *Kulko* and satisfy Due Process of Law requirements, but the disputed facts must be determined, resolved, and weighed by the trial court.[6] This is a two-step fact-finding process. *See Deerinwater v. Circus Circus Enterprises*, 2001 OK CIV APP 37, ¶¶ 12–13, 21 P.3d 646, 650.

¶ 19 The Supreme Court did observe that California "has not attempted to assert any

---

4. The "effects test" recognizes that an individual may cause an effect in one state as a consequence of acts performed outside the state. Restatement (Second) of Conflict of Laws § 37 (1971). The Court viewed this test as one intended "to reach wrongful activity outside the State causing injury within the State." *Kulko*, 436 U.S. at 96, 98 S.Ct. at 1699.

5. Hearing Transcript, pp. 6–7.

6. Resolution of factual issues is a matter for the trial court, not the appellate court, in the first instance. *Bivins v. State ex rel. Oklahoma Mem. Hosp.*, 1996 OK 5, ¶ 19, 917 P.2d 456, 464.

particularized interest in trying such cases in its courts by, *e.g.*, enacting a special jurisdictional statute." However, unlike California in *Kulko*, Oklahoma has a statute, Section 601–201 of Title 43, which is a special jurisdictional statute. Subsection 601–201(5) confers jurisdiction to decree child support when the child is in Oklahoma as a result of acts or directives of the non-resident parent to be charged with the support obligation.[7] Here, the Mother has alleged facts to bring herself within the scope of this provision, but the Father has denied her allegations and the trial court did not make any findings of fact. The trial court's reliance on public policy will not suffice to cure this failure and is here error, thus requiring remand to the trial court.

¶ 20 Subsection 601–201(8) represents a catch-all attempt to extend the statute to its limits. If there are additional facts available to meet the reasonableness and minimum contacts criteria, such facts are not apparent from the record before this Court. However, on remand, Mother is free to present any such facts and legal analysis she believes may support application of this subdivision subject to the trial court orders.

▮ ¶ 21 The process to resolve the jurisdictional question involves a two-step analysis. *Taylor v. Phelan*, 912 F.2d 429 (10th Cir.1990). The basic outline looks first to the long-arm statute, here 43 O.S. Supp.1994, § 601–201(5) and (8), then to the Due Process analysis of minimum contacts and the fairness factors.

▮ ¶ 22 The first step determines whether the long-arm statute, here Section 601–201(5) and (8), applies. This Court holds that the statute does apply here to the child support portion of the dispute. Clearly, the

statute is designed to apply to family law matters involving child and (ex)spousal support issues when parents reside in different states. Moreover, the statute is one where Oklahoma has asserted a particularized interest in trying such cases in its courts.[8]

▮ ¶ 23 The second step ascertains whether the exercise of personal jurisdiction comports with the requirements of Due Process. *Taylor v. Phelan*, 912 F.2d at 432.[9] The trial court decides whether the plaintiff has established a *prima facie* case of minimum contacts with the forum state by each defendant sufficient to justify jurisdiction, that is, Due Process. The elements to be decided are:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) The claim must be one which arises out of or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction must be reasonable.

*Taylor v. Phelan*, 912 F.2d at 431.

¶ 24 It is in this stage that the record here fails. The trial court has not made the requisite findings as to this second step to support a conclusion subject to appellate review.

¶ 25 Father relies on *Taylor v. Taylor*, 1985 OK CIV APP 26, 709 P.2d 707. The issue in *Taylor* was whether the then 1980 Oklahoma long-arm statute vested jurisdiction over a nonresident husband who was served out-of-state with a resulting divorce decree that included child support and alimony.[10] The ex-husband moved to vacate the

---

**7.** Whether this statute comports with *Kulko* is not an issue in this appeal and no judgment of the validity or merits of the statute is here intended. This Court only notes that the statute's language connotes "purposeful" acts on the part of the nonresident parent.

**8.** A duty of support includes both a duty to support a child (children) and an (ex)spouse. 43 O.S. Supp.1994, § 601–101(3).

**9.** In *Taylor*, the Court ruled that the facts could be presented by affidavits. Whether this process

for resolving factual disputes comports with Oklahoma procedural requirements need not be and is not decided here.

**10.** The statute then in force was 12 O.S.1981, § 170.1. In part, the statute provided:

Service may be made outside of the State either by personal service or by mail, at the election of the plaintiff, in any action, including:

. . . .

decree as to the personal money judgments when the ex-wife sought to collect arrearages of alimony and child support.[11] The Court cited *Kulko* for the proposition that minimum contacts were required and the unilateral activity of one party cannot serve to subject the other to personal jurisdiction. The Court ruled that the trial court did not have jurisdiction. In addition, the Court ruled that the ex-wife's "argument that appellant purposely availed himself of the laws of Oklahoma by relying on his wife to obtain a valid divorce decree here is patently without merit." *Taylor*, 1985 OK CIV APP 26 at ¶ 6, 709 P.2d at 709. It did not appear that the ex-husband had ever been in the State or had property here. Thus, the reasoning in *Taylor* shows that the facts there would not support a finding here under the second step above that would favor jurisdiction.

■ ¶ 26 It is clear that the present statute was enacted to conform to *Kulko* and similar cases, including *Taylor*. Thus, subdivisions 5 and 8, set out above, do not relieve a plaintiff-spouse from the application of *Kulko*. However, *Taylor* does not dispose of the matter here under review because there are facts remaining to be adjudicated concerning whether the Father has purposefully availed himself of conducting activities in Oklahoma. When a necessary disposition of fact is absent from the record, the case must be remanded with directions that the facts be adjudicated by the trial court, as this is not the function of the appellate court. *Bivins*, 1996 OK 5 at ¶ 9, 917 P.2d at 464.

### B. Waiver by Payment of Child Support

■ ¶ 27 Mother asserts that Father paid child support for eleven months preceding this matter under review, and thus has waived his complaint about jurisdiction. Father states that such payments were made involuntarily as a result of an income wage assignment instituted by ODHS. The waiver question to be operative assumes that the

facts do not support a finding that the trial court had personal jurisdiction when the decree was entered.

¶ 28 Again, the facts concerning the particulars of how and under what authority this child support is being collected do not appear in the record here. The Father's statement that his payments are involuntary was not refuted. The record does not affirmatively establish the conditions under which or how he made the support payments, whether the payments were ordered administratively in a contested or default matter as opposed to a post-decree order in the divorce case, and whether he asked for any relief such as modification of support.

■ ¶ 29 In general, a party is not required to take any steps to have a void judgment reversed, vacated, or set aside, and whenever it is brought up against the party he may attack its validity. It is supported by no presumptions, and may be impeached in any action, direct or collateral. *Condit v. Condit*, 1916 OK 905, 168 P. 456 syl. 2. Moreover, a nonresident may challenge service and jurisdiction and still defend so long as affirmative relief is not requested. *Bill Hodges Truck Company v. Williams*, 1970 OK 98, ¶ 34, 470 P.2d 310, 317; *Allen v. Ramsey*, 1935 OK 98, ¶ 56, 41 P.2d 658, 668. Thus, the record before this Court does not permit a conclusion at this time that Father waived jurisdiction at any time.

### SUMMARY AND CONCLUSION

¶ 30 The trial court's reliance upon a policy of providing support for children will not sustain personal jurisdiction. Moreover, neither the unilateral acts of Mother nor mere acquiescence by Father in the removal to Oklahoma will enable the Oklahoma court to exercise jurisdiction. However, there is here an applicable long-arm statute. Nevertheless, there remain facts yet to be adjudicated

---

5. Actions brought to obtain a divorce or the annulment of a marriage.
Subdivision 7 concerns actions for alimony and child support if the defendant has property in the State subject to appropriation to satisfy the support claim, a case not shown to exist in *Taylor*. Moreover, Section 170.8 provided that

such service did not confer personal jurisdiction over one not otherwise subject to jurisdiction or who appears in the case.

11. The recitation of facts does not indicate whether any of the court-ordered support had been paid.

which, if proven upon hearing, may demonstrate that the quality and nature of the Father's acts are such that it is reasonable and fair to require him to conduct his defense in the state and thus satisfy Father's Due Process of Law rights. *Kulko,* 436 U.S. at 92, 98 S.Ct. at 1696.

¶31 The judgment of the trial court is reversed and remanded for further proceedings.

¶32 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

GOODMAN, P.J., and REIF, J., concur.