2009 OK 91

Paul M. POWERS, Petitioner,

v.

The DISTRICT COURT OF TULSA COUNTY, State of Oklahoma, and the Honorable Terry H. Bitting, Special District Judge, Respondents.

and

Paul M. Powers, Petitioner,

v.

The District Court of Tulsa County, State of Oklahoma, and the Honorable Carl Funderburk, Special District Judge, Respondent.

Nos. 105,611, 106,432.

Supreme Court of Oklahoma.

Dec. 8, 2009.

As Corrected Dec. 29, 2009.

 

husband to the matrimonial-based claims of his wife. We adjudicate both proceedings by a single opinion without consolidation. We hold in No. 105,611 that the record presented in the extraordinary writ proceeding is insufficient to challenge the district court's order. We hold in No. 106,432 that the district court's order sustaining *in personam* jurisdiction over the husband is in error because (1) Husband's motion challenged *the facial sufficiency of Wife's petition, as amended,* and not the factual basis of *in personam* jurisdiction over Husband, and (2) the trial court's reliance upon facts appearing beyond the face of the pleadings is an application of an incorrect standard for testing the *facial* sufficiency of those pleadings.[1] We deny prohibition in No. 105,611. In No. 106,432 we deny prohibition in part, and grant prohibition in part to prevent enforcement of the District Court's order and direct the trial court to provide a full and fair opportunity for the parties to present any evidence on the issue of *in personam* jurisdiction. We assume original jurisdiction pursuant to Okla. Const. Art. 7 § 4 to explain procedure when challenging the sufficiency of *in personam* jurisdiction allegations involving 43 O.S.Supp. 2004 § 601–201 of Oklahoma's version of the Uniform Interstate Family Support Act.

### I. No. 105,611

¶ 2 Husband and Wife resided in the State of Missouri. Wife moved to Oklahoma and a few days later filed an action seeking legal separation, alimony, child support, child custody and attorney's fees.[2] Two days later Husband filed an action for divorce in Missouri. Husband was served with process in the Oklahoma proceeding but did not answer or otherwise plead within the time allowed by 12 O.S.Supp. 2004 § 2012, and 12 O.S.2001 §§ 2026, 2027, and District Court Rule 2.[3]

Anthony Allen, James W. Feamster, III–PLLC, Anthony Allen, Seymour & Graham LLP, Tulsa, OK, for Petitioner.

Jack R. Givens, Givens and Givens, Tulsa, OK, for Real Party in Interest.

EDMONDSON, C.J.

¶ 1 These two proceedings involve challenges to *in personam* jurisdiction made by a

---

1. The trial court relied upon orders from a Missouri court for establishing *in personam* jurisdiction but the parties do not argue and brief, with authority, that the Missouri court's orders are sufficient to create *in personam* jurisdiction in an Oklahoma court over the Missouri resident. *The effect of those orders is not before us in this proceeding.*

2. In re: Marriage of Powers, Monique L. Powers and Paul M. Powers, FD–2007–3585 (Tulsa County District Court).

3. 12 O.S.Supp.2004 § 2012(A) ("A defendant shall serve an answer within twenty days after the service of the summons and petition upon the defendant, except as otherwise provided by the law of this state."); 12 O.S.2001 § 2026 (the forms in § 2027 "are sufficient under the Oklahoma Pleading Code"); 12 O.S.2001 § 2027

Wife, with notice to Husband, filed a motion for default judgment.

¶ 3 After the time to answer or otherwise plead, Husband filed a special appearance with a motion to dismiss challenging *in personam* jurisdiction. The trial court held one hearing, without adjudicating the motion to dismiss, and allowed Wife time to amend her petition. The trial court then held a hearing, determined Husband was in default, declined to consider the motion to dismiss, took evidence on the issue of temporary support, and issued an order for temporary support. Husband then filed a motion to vacate the temporary support order and requested that the trial court consider his motion to dismiss.

 ¶ 4 During a trial court hearing, discussion was had whether Husband's motion to dismiss could be considered when the trial court had not granted Husband leave to file out of time, and whether a request for such leave would waive *in personam* jurisdiction. Prior to expiration of the time to answer or otherwise plead, a party may request additional time pursuant to 12 O.S. 2001 § 2006(B)(1) to file a special appearance and motion to dismiss for lack of *in personam* jurisdiction without waiving the defense of lack of *in personam* jurisdiction.[4] A request for extension of time pursuant to § 2006(B)(2) may be granted to file a special appearance and motion to dismiss without

waiving *in personam* jurisdiction if the failure to act timely was the result of excusable neglect. Thus, a trial court's denial of either a § 2006(B)(1) or § 2006(B)(2) motion combined with a *special* appearance does *not* act to waive a defendant's defense of a lack of *in personam* jurisdiction.

 ¶ 5 Husband's special appearance and motion to dismiss filed after his time to answer or otherwise plead without leave of court, or having been treated by the court as timely, is a nullity and of no effect.[5] Husband's untimely motion to dismiss and special appearance filed without leave of court was not an appearance, but the filing did not waive *in personam* jurisdiction. Husband's failure to answer or otherwise plead within the time allowed by the Pleading Code resulted in a default "judgment" for temporary child support, but did *not* waive his *in personam* jurisdiction defense.[6]

 ¶ 6 Federal court opinions discussing challenges to *in personam* jurisdiction, both pre- and post-adoption of the Oklahoma Pleading Code, state that when a motion to dismiss for lack of *in personam* jurisdiction is filed "the district court must accept as true the allegations set forth in the complaint to the extent they are uncontroverted by defendant's affidavits." *Ten Mile Industrial Park v. Western Plains Service Corp.,* 810 F.2d 1518, 1524 (10th Cir.1987).[7] Prior to trial,

---

(Form 1, Summons) (You have been sued ... and you are directed to file a written answer to the attached petition within twenty days after service of this summons ... ); 12 O.S.2001 Ch. 2, App. District Court Rule 2, ("Defendants ... shall file their responsive pleading with the court clerk and serve copies on all opposing parties within 20 days after being served with process unless the time is extended by the service and filing of a motion or by the entry of an appearance....").

4. *Young v. Walton,* 1991 OK 20, 807 P.2d 248; *State ex rel. Gaines v. Beaver,* 1945 OK 318, 196 Okla. 560, 166 P.2d 776, 780; *Braden v. Williams,* 1924 OK 63, 101 Okla. 11, 222 P. 948, 949.

5. *Brown v. Green Country Softball Ass'n,* 1994 OK 124, 884 P.2d 851, 852; *Durant Civic Foundation, Inc. v. Grand Lodge of Okla. of the Ind. Order of Odd Fellows,* 2008 OK CIV APP 54, ¶ 8, 191 P.3d 612, 614 –615; *Nard v. State,* 1965 OK CR 158, 412 P.2d 489, 490.

6. A default judgment is a judgment entered against a party because of that party's failure to comply with a command imposed by law. Thus a "default judgment has been defined as a judgment rendered in consequence of the non-appearance of the defendant." *Choctaw County Excise Board v. St. Louis–San Francisco Ry. Co.,* 1969 OK 110, 456 P.2d 545, 548. Remedies for challenging a default judgment are the statutes authorizing vacation of default judgments. *Jupe v. Home Owners Loan Corp.,* 1946 OK 91, 196 Okla. 588, 167 P.2d 46, 48. If a default judgment is entered without *in personam* jurisdiction, the judgment must be vacated. *Farmers' Union Co–Operative Royalty Co. v. Woodward,* 1973 OK 128, 515 P.2d 1381, 1384.

7. *See also Melea, Ltd. v. Jawer, SA,* 511 F.3d 1060, 1065 (10th Cir.2007); *Behagen v. Amateur Basketball Ass'n of U.S.A.,* 744 F.2d 731, 733 (10th Cir.1984) *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985); *American Land Program Inc. v. Bonaventura Uitgevers Maatschappij, N.V.,* 710 F.2d 1449, 1454 (10th Cir.1983).

when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a *prima facie* showing.[8] In federal courts "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." [9] When an evidentiary hearing is held to resolve factual disputes relating to *in personam* jurisdiction, the party asserting jurisdiction "has the burden to prove facts supporting jurisdiction by a preponderance of the evidence." *Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir.1992). When facts outside of the pleadings are submitted on the issue of *in personam* jurisdiction, a motion to dismiss is not converted to a motion for summary judgment unless resolution of the jurisdictional question is intertwined with the merits of the cause of action.[10] The attacks upon jurisdiction are thus classified as motions attacking the sufficiency of the complaint, motions which raise extra-pleading facts, and motions that contest jurisdictional facts that are intertwined with the merits of the action.[11]

 ¶ 7 In courts of this state, a *special* appearance with a motion to dismiss is a proper method to challenge *in personam* jurisdiction.[12] While every provision of District Court Rule 4 does not govern each and every motion-filed in a District Court,[13] Rule 4 does govern motions to dismiss for a lack of *in personam* jurisdiction.[14] Authors have explained that a defendant challenging *in personam* jurisdiction has an initial *procedural* burden to raise the facts challenging *in personam* jurisdiction.

8. *Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir.1992). *See Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir.1984) *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985) citing *American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449 (10th Cir.1983), and collecting cases from the Second, Fifth, Seventh, and Ninth Circuit Courts. *See also OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998) ("When a district court rules on a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion.").

9. *Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir.1992); *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir.1984) *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). *See also Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981); *Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1189, 1190 (7th Cir.), *cert. denied*, 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980).

10. *Flynn v. Ohio Building Restoration, Inc.*, 260 F.Supp.2d 156, 161 (D.D.C.2003); *Davis ex rel. Davis v. U.S.*, 343 F.3d 1282, ·1296 (10th Cir. 2003); *U.S. v. Rodriguez–Aguirre*, 264 F.3d 1195, 1203 (10th Cir.2001).

11. *See, e.g., Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir.1992). (discussion of a facial attack on the complaint as well as attack raising contested facts); *Wempe v. Sunrise Medical HHG, Inc.*, 61 F.Supp.2d 1165 (D.Kan.1999) (A court may decide *in personam* jurisdictional issues by reference to affidavits, after a pretrial evidentiary hearing, or at trial if the issues are- intertwined with the merits of the suit.).

12. *In re Turkey Creek Conservancy District*, 2008 OK 8, n. 4, 177 P.3d 558, 561; *Steincamp v. Steincamp*, 1979 OK 51, 593 P.2d 495, 498; 12 O.S.2001 § 2012(B)(2).

13. *White v. White*, 2007 OK 86, ¶¶ 7–9, 173 P.3d 78, 79–80 (listing examples when certain provisions have been found inapplicable and holding that a motion for a change in child custody is not deemed confessed by application of Rule 4); *Record v. Record*, 1991 OK 85, 816 P.2d 1139, 1141 (Rule 4 "primarily governs pretrial motions" and does not apply to a motion for new trial).

14. 12 O.S.2001 Ch. 15, App. 1, Okla. Sup.Ct. R. 1.36(a)(2) (Okla. Sup.Ct. R. 1.36 applies to "final orders in cases in which motions to dismiss for failure to state a claim or lack of jurisdiction (of a person or subject matter) under District Court Rule 4...."); Clark, David S. & Adams, Charles W., *Oklahoma Civil Pretrial Procedure: Jurisdiction, Service of Process, Venue,* Motions to Dismiss Under Section 2012, § 10.1, 253, 256 (1995) ("Rule 4 of the Rules for District Courts of Oklahoma establishes general guidelines for motions, including motions to dismiss under section 2012."). See also Civil Rule 17, Fourteenth Judicial District, which states that motions in civil cases must comply with Rule 4 of the Rules for .the District Courts. *Oklahoma Court Rules and Procedure: State, 2008,* Rules of the Fourteenth Judicial District [Tulsa and Pawnee Counties], 1039, 1046 (Thomson/West).

The defendant initially has the burden of challenging the propriety of a summons, jurisdiction, or venue, but once this is done, the burden of proof shifts to the plaintiff. To satisfy the initial burden, a defendant will ordinarily need to accompany a motion to dismiss with an affidavit from either a person with knowledge of the facts, if possible, or otherwise by an attorney who states what the proof would show at a hearing.

David S. Clark & Charles W. Adams, *Oklahoma Civil Pretrial Procedure: Jurisdiction, Service of Process, Venue,* Motions to Dismiss Under Section 2012, § 10.1, 253, 257 (1995).

> Normally, motions seeking a dismissal for lack of personal jurisdiction are accompanied by detailed affidavits setting forth the absence of contacts with Oklahoma. Conversely, responses to the motion are also accompanied by affidavits attempting to establish the sufficiency of the contacts to warrant the assertion of personal jurisdiction.

1–A Charles W. Adams & Daniel J. Boudreau, *Vernon's Oklahoma Forms 2d: Civil Procedure,* Motion to Dismiss–Lack of Jurisdiction Over the Person, § 4.4, 195, 196 (1999).

This Court has often explained that when *in personam* jurisdiction is challenged the jurisdiction over a non-resident defendant cannot be inferred, but must affirmatively appear from the trial court *record,* and the burden of proof in the trial court is upon the party asserting that jurisdiction exists.[15] However, *in personam* jurisdiction may be waived by a defendant by a mere failure to object in a timely manner,[16] and so a defendant has a *procedural* burden to place the challenge before the trial court at the proper time and in the proper form.

¶ 8 Approximately twenty years ago this Court stated that a motion may raise an issue of fact pursuant to Rule 4(c) of the Rules for District Courts. In *Mott v. Carlson,* 1990 OK 10, 786 P.2d 1247, we observed that "Motions raising fact issues shall be verified by a person having knowledge of the facts, if possible; otherwise, a verified statement of counsel of what the proof will show will suffice until a hearing or stipulation can be provided." *Id.* at 1251. We explained more recently that "The scope of Rule 4 includes motions not involving the merits of the action; and facts material to such motions, when contested, must be tried by the appropriate trier of fact." *Crest Infiniti, II, LP v. Swinton,* 2007 OK 77, ¶ 10, 174 P.3d 996, 1002. The procedure for raising facts in support of a pre-trial motion has been well-settled. Husband's motion to dismiss was not accompanied by affidavit of Husband or by counsel showing what proof would show at an evidentiary hearing to adjudicate contested facts. The motion was not accompanied by an evidentiary substitute.[17] Husband's § 2012(B)(2) motion to dismiss challenging *in personam* jurisdiction thus challenges the facial sufficiency of Wife's petition, and our usual analysis would now discuss the facial sufficiency of Wife's petition for showing facts for long-arm jurisdiction based upon a standard of notice pleading. But additional analysis of the parties' respective burdens in the trial court is not necessary due to the

---

**15.** *Gilbert v. Security Finance Corp.,* 2006 OK 58, ¶ 2, 152 P.3d 165, 171; *Conoco, Inc. v. Agrico Chemical Co.,* 2004 OK 83, ¶ 20, 115 P.3d 829, 835; *Union Bank v. Ferris,* 1978 OK 149, 587 P.2d 454, 455; *Roberts v. Jack Richards Aircraft Co.,* 1975 OK 72, 536 P.2d 353, 354; *Crescent Corp. v. Martin,* 1968 OK 95, 443 P.2d 111, 117–118.

**16.** 12 O.S.Supp.2004 § 2012(F)(1):

1. A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, insufficiency of service of process, failure to state a claim upon which relief can be granted, or lack of capacity of a party to be sued is waived:

a. if omitted from a motion that raises any of the defenses or objections which this section permits to be raised by motion, or

b. if it is not made by motion and it is not included in a responsive pleading or an amendment thereof permitted by subsection A of Section 2015 of this title to be made as a matter of course. A motion to strike an insufficient defense is waived if not raised as in subsection D of this section.

**17.** *See Willis v. Sequoyah House, Inc.,* 2008 OK 87, n. 14, 194 P.3d 1285, 1290 (explanation that proof consists of matters tendered in probative form for admission as evidence).

state of the record in this writ proceeding.[18]

¶ 9 Husband filed a motion to vacate the default "judgment" with a request for the trial court to hear his previously filed motion to dismiss. Husband's Summary of Record in his brief states that the trial court's hearing decided both the motion to dismiss and motion to vacate, and that the trial court concluded that *in personam* jurisdiction was present under the Uniform Interstate Family Support Act, and that the trial court did not rely on a theory of default by Husband used by the trial court at a previous hearing. Brief at page 5.[19] Husband cites to "Appendix, Exhibit A, page 6" in support of his statement. Exhibit A is the docket sheet that shows a minute entry stating that the motion to dismiss is denied and the motion to vacate is overruled. No reason is given in the minute entry for denying the motion to dismiss and overruling the motion to vacate. However, the actual Journal Entry signed by the judge, "Exhibit T" in Petitioner's Appendix, states that the matter before the court is a motion to vacate, has no statement concerning why the motion to vacate is overruled, and contains *no* reference or citation to either the U.I.F.S.A. or the motion to dismiss. Wife does not state in her Response/Brief in this Court what happened at the hearing on the motion to vacate, and thus there is no admission by her brief on this issue.[20] She does make a general unspecified objection to statements of fact in Husband's filings that are unsupported by record, affidavit, or verification in the trial court and "in this Original Action." Response, at 4. Generally, a journal entry controls over an inconsistent minute entry.[21] We would ordinarily examine the rest of the trial court record before us to determine if the record is sufficient to inform the Court what actually happened in the trial court, and if a true inconsistency exists between the minute and journal entry or whether they may be harmonized.

¶ 10 This proceeding is not an appeal, but a challenge to a District Court's order in an action independent of the one before the trial court, and we examine the arguments presented to the trial court *that appear in the record prepared for us by the parties. Christian v. Gray*, 2003 OK 10, ¶ 15, 65 P.3d 591, 600. In an appeal the procedural burden to produce a record sufficient to review assigned error is on the party

18. In federal court a plaintiff has the duty to make jurisdictional allegations in the complaint sufficient for notice pleading and then support them by competent proof if the allegations are challenged. *Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371, 1376 (10th Cir.1989). Federal Rule 12(b)(6) motions are treated differently from 12(b)(1) & (2) motions for the purpose of whether attached materials convert the motion to one for summary judgment. See the discussion of federal procedure and authority at notes 7–10 *supra*. Because the record in No. 105,611 is inadequate to challenge the order of the District Court we need not discuss whether Wife met either her notice-pleading burden or her burden to produce facts in opposition to a procedurally proper jurisdictional challenge contesting facts.

19. Husband's Appendix herein contains a synopsis [see Okla.Sup.Ct.R. 1.191(d)(3)(d) ] of the order denying motion to vacate which states as follows: "Judge Bitting found personal jurisdiction over Paul Powers under the Uniform Interstate Family Support Act instead of under a theory of waiver of personal jurisdiction by untimely filing." The cover of the Appendix contains the printed name of counsel, but the Appendix is not supported by an affidavit, verified by counsel, or signed by counsel. The Court has explained that unsworn statements of counsel in a motion do not constitute evidence. *Crest Infiniti, II, LP v. Swinton*, 2007 OK 77, ¶ 10, 174 P.3d 996, 1002.

20. *S.W. v. Duncan*, 2001 OK 39, n. 14, 24 P.3d 846, 855 (Court explained that an admission in a brief may supplement the record in an extraordinary writ proceeding as well as in an appeal); *Brock v. Thompson*, 1997 OK 127, n. 4, 948 P.2d 279, 283 (same). *See, e.g., Kelley v. Kelley*, 2007 OK 100, n. 10, 175 P.3d 400, 404 (in context of a writ proceeding the Court stated and applied the appellate rule that an admission in a brief may be used to supplement the record); *Holmes v. Nightingale*, 2007 OK 15, n. 10, 158 P.3d 1039, 1043 (same); *World Pub. Co. v. White*, 2001 OK 48, n. 38, 32 P.3d 835, 845 (same).

21. *See, e.g., Harjo v. Johnston*, 1933 OK 144, 162 Okla. 153, 19 P.2d 961, 963 ("Even though there be a conflict between the minutes of the court clerk and the trial court's journal entry as to the date of the proceedings of the trial court, the journal speaks the record, governs, and controls."); *State v. Ford*, 1977 OK 233, 573 P.2d 257, 258 (a journal entry of judgment controls inconsistent minute).

assigning the error,[22] and in a supervisory writ proceeding the procedural burden to produce a record sufficient to review the trial court's alleged error is on the party alleging the error.[23] This means that Husband must prove a negative in the writ proceeding, *i.e.*, that Wife failed to meet her burden in the trial court, either a notice-pleading burden when the face of the petition is challenged or factual burden when facts are contested by a procedurally proper method.[24] He may meet this burden by making a record *in the writ proceeding* that includes the submissions involving jurisdiction that were filed by the Wife in the trial court and making a record in the writ proceeding of the trial court's adjudication of those submissions.

¶ 11 Husband's record in this Court includes the trial court docket which shows that Wife filed a response to the motion to vacate. But Husband does not include in this writ proceeding a copy of Wife's response to the motion to vacate that was filed in the trial court.[25] Wife states in her brief

in this writ proceeding that "Mr. Powers never denied Mrs. Powers' affidavits," but the brief does not identify the location in the trial court record or record of this writ proceeding where these affidavits occur. Brief at 11. Husband does not refer to Wife's affidavits. Husband did not file in this Court a narrative statement, signed by the trial judge, of the hearing on the motion to vacate, or a transcript of the hearing on the motion to vacate, or an affidavit by counsel stating the claims by the parties made on the motion to vacate and response, or an affidavit stating the nature of the adjudication by the trial court on the motion to vacate. The trial court's journal entry indicates that a motion to vacate was adjudicated, but the record *in this writ proceeding* does not show what claims were actually adjudicated.

¶ 12 In sum, due to the state of the record presented to this Court, no conclusion may be reached whether (1) the trial court considered the temporary support order as an intermediate order[26] not subject

**22.** *Ray v. Ray*, 2006 OK 30, ¶ 12, 136 P.3d 634, 637 ("The appealing party must include in the record for appeal all materials necessary for corrective relief."); *Pracht v. Oklahoma State Bank*, 1979 OK 43, 592 P.2d 976, 978 ("The appellant bears the burden of demonstrating a sufficient record and applicable law to demonstrate in this Court that the trial court committed error since error in the lower court is not presumed.").

**23.** A petitioner for extraordinary relief bears the burden to raise those facts necessary to support the petitioner's request for relief. *Scott v. Peterson*, 2005 OK 84, ¶ 20, 126 P.3d 1232, 1237; *James v. Rogers*, 1987 OK 20, 734 P.2d 1298, 1299; *City National Bank & Trust Co. v. Owens*, 1977 OK 86, 565 P.2d 4, 9. *Accord, Phelps v. Childers*, 1939 OK 83, 184 Okla. 421, 89 P.2d 782, 788 (one of the respondents' defenses to the writ was based upon an alleged absence of a required publication, and in rejecting the argument the Court noted that the relevant legal principle "can be applied only when proof is made that no such publication occurred.").

**24.** This burden is similar to that of an appellant in an appeal assigning as error insufficient evidence to support a judgment. For the Court to review assigned error of insufficient evidence the record on appeal must contain the evidence submitted to the trial court. *Harrison v. Harman*, 1925 OK 937, 115 Okla. 40, 241 P. 476. For the Court to review in an extraordinary supervisory writ proceeding the alleged error of plaintiff's insufficient showing of facts, by pleading or evidence, to support the exercise of long-arm juris-diction a petitioner must produce plaintiff's filings as part of the record in the extraordinary writ proceeding. In the context of a supervisory writ this Court does not *usually* examine the *sufficiency* of evidence to support a trial court's order, *Crest Infiniti, II, LP v. Swinton*, 2007 OK 77, n. 8, 174 P.3d 996, 1001. An extraordinary supervisory writ challenge to *in personam* jurisdiction will not usually decide, in the first instance, a question of fact necessary for the minimum requirements of due process, *but the Court does examine if the facts are sufficient to show, using the appropriate procedural burden, whether a trial court is acting beyond its jurisdictional powers*. *Crescent Corp. v. Martin*, 1968 OK 95, 443 P.2d 111, 118.

**25.** We note that Husband's Appendix contains some instruments purportedly filed in the district court. These instruments are neither certified by the trial court clerk nor stated by affidavit of counsel to be correct copies of the documents filed in the trial court. Okla. Sup.Ct. R. 1.191(d) states that the Appendix may contain copies of pertinent portions of the trial court record.

**26.** An order for temporary child support is not appealable as a final order. *Elliott v. Elliott*, 1954 OK 356, 279 P.2d 328, 329. In *Kantor v. Kantor*, 1994 OK 132, 886 P.2d 480 the Court stated that "The provisions of 12 O.S.Supp.1993 § 993(A)(5), by which orders directing the payment of money *pendente lite* are appealable, do not apply to temporary support orders or orders for the payment of temporary attorney fees in

to review by a premature § 1031.1 request[27] and denied the motion on a procedural ground,[28] or (2) if the trial court disregarded Husband's invocation of § 1031.1 and ruled on the merits of husband's jurisdictional defense based upon Wife's affidavits not before us in this writ proceeding, or upon some other basis.[29] The record before us in No. 105,611 is insufficient to show that the District Court is proceeding without *in personam* jurisdiction of the husband and Husband's burden for showing the requisite elements for prohibition has not been satisfied. We thus decline to issue prohibition in No. 105,611.

## II. No. 106,432

### A. Husband's Challenge to the Allegations in the Petition

 ¶ 13 Wife filed a petition for divorce in a second proceeding in Tulsa County. Husband filed a special appearance and motion to dismiss for lack of *in personam* jurisdiction. The trial court granted the motion to dismiss. Wife sought reconsideration, and after a response by Husband and reply by Wife, the trial court granted the motion and vacated its earlier order. The trial court's ruling stated that Oklahoma was the "home state" of the child and that a Missouri court had agreed that the divorce as well as custody and support issues should be decided in Oklahoma.[30] The trial court also ruled that *Taylor v. Taylor,* 1985 OK CIV APP 26, 709 P.2d 707 (released for publication by order of the Court of Civil Appeals), gave it jurisdiction to determine the request for divorce and child custody, and indicated that the Missouri court's orders directing Husband to litigate the divorce, custody, and support issues in Oklahoma provided a separate jurisdictional basis.

 ¶ 14 Husband filed a special appearance and motion to dismiss in the District Court. The motion states that a divorce proceeding is pending in Missouri between the parties, but the motion has no affidavit or evidentiary substitute bringing that fact before the trial court.[31] Husband filed no affi-

matrimonial cases. The latter are predicated on the general duty of parental or spousal support." *Id.* at 480.

27. Husband's motion to vacate the order of temporary support invoked 12 O.S.2001 § 1031.1. A § 1031.1 motion, when used, must be used to challenge a judgment, decree, or appealable order. *LCR, Inc. v. Linwood Properties,* 1996 OK 73, 918 P.2d 1388, 1393. The § 1031.1 motion did not challenge a judgment, decree, or appealable order, but challenged a ruling anterior to judgment and the motion was a premature § 1031.1 request.

28. *Generally,* a premature motion has the same effect as one filed too late; neither is procedurally effective in placing the substantive adjudicatory issue before the court. *Brown v. Green Country Softball Ass'n,* 1994 OK 124, 884 P.2d 851, 852.

29. Intermediate orders are those non-final orders made in the course of an action or proceeding that remain under the plenary control of the trial judge until the controversy has culminated in judgment. *City of Lawton v. International Union of Police Associations, Local 24,* 2002 OK 1, n. 14, *41 P.3d 371,* 374. *See also Oklahoma City Urban Renewal Auth. v. City of Oklahoma City,* 2005 OK 2, n. 18, 110 P.3d 550, 557.

30. Order Sustaining Motion for Reconsideration and Determining Jurisdiction Respecting Divorce and All Related Issues, filed Sept. 19, 2008, FD-2008–983. Appendix to Petitioner's Brief in Support, etc., filed October 21, 2008, Okla. Sup. Ct. No. 106,432, Exhibit N.

31. Courts do not generally take judicial notice of the record of a different court. *Manley v. Brown,* 1999 OK 79, n. 45, 989 P.2d 448, 458; *Salazar v. City of Oklahoma City,* 1999 OK 20, n. 10, 976 P.2d 1056, 1061. Wife's Petition for Dissolution of Marriage in FD–2008–983 states the style and location of the then pending Missouri divorce proceeding. Wife's Appendices in No. 105,611 and 106,432 contain copies of the Missouri court's orders but do not show where the orders were made part of the trial court record. The trial court clearly used the orders of the Missouri court in its decision. The portion of the trial court record before us does not show the procedural propriety of the trial court using the Missouri court orders on a facial challenge to the sufficiency of a petition when the record before us does not show that the orders were incorporated as part of the petition and amended petition. In this supervisory proceeding, the procedural burden is upon Husband to show that the Missouri orders were not incorporated in the amended petition, but as indicated herein, Husband, as well as Wife, does not address either the procedural or substantive effect of the Missouri court's orders, or defend with authority the trial court's use of those orders. See note 1, *supra,* and notes 32 and 47 *infra.*

davits or evidentiary substitutes challenging the alleged facts in Wife's petition, and so we construe his jurisdictional challenge as one attacking the facial sufficiency of Wife's petition.[32] The motion to dismiss was granted and Wife requested reconsideration by a motion with attached photocopies of legal authority. Husband's Response to Motion for Reconsideration was not accompanied by affidavit, did not contest any issue of fact, and thus contained only legal argument. We accordingly construe his response to the motion for reconsideration as a continuation of his challenge to the *facial sufficiency* of the petition.

¶ 15 Wife's verified petition states that "Respondent [Husband] agreed with Petitioner that she could go to Oklahoma with their child, ... [and] remove her own separate furniture from the marital home to Oklahoma...." [33] Wife alleges that Husband refused to let Wife stay in their marital home in Missouri,[34] and that Wife had no choice but to move into her parents' home in Okla-

homa. She alleges that the parties attended counseling prior to the move, and Husband argues this same point in his motion to dismiss stating that the both of them "had open discussion concerning a separation or pending divorce." [35] She also alleges being fearful of Husband due to his verbal abuse and threats against her, his erratic behavior including D.U.I. arrests, alcoholism, one instance of breaking a locked door to gain access to her and one instance of his falling down stairs while carrying a child. She alleges that before moving to Oklahoma she would lock herself in a room in their home for her personal safety.[36]

 ¶ 16 A federal court is a court of limited jurisdiction and jurisdiction must be pled by the party invoking the court's jurisdiction.[37] The federal rules require that the allegations of jurisdiction satisfy the notice-pleading standard in Federal Rule of Civil Procedure, Rule 8(a), which requires a short and plain statement of the grounds upon which the court's jurisdiction depends.[38] Un-

---

32. Husband's Appendix in this Court contains various instruments allegedly filed in a court in the State of Missouri. Appendix to Petitioner's Brief, etc., No. 106,432. They, like some of the instruments submitted by Wife's Appendix, do not appear in the Appendix as part of instruments filed in the trial court, nor are they exhibits to a trial court transcript, or accompanied by counsel's affidavit showing their introduction into the trial court record prior to the trial court's decision. Due to the nature of our disposition herein we have discussed facts that appear in Husband's Appendix (as well as Wife's) without separating or culling those facts that lack a showing of their introduction as part of the trial court record, and we also have not addressed the issue which of Husband's facts in his Appendix in No. 105,611 also show that they were part of the trial court record or may receive judicial notice in No. 106,432. *House of Realty, Inc. v. City of Midwest City,* 2004 OK 97, n. 1, 109 P.3d 314 (this Court may take judicial notice of its own records in litigation interconnected with the proceeding before the Court).

Generally, a request for prohibition in this Court must be preceded by the petitioner presenting the same claim to the inferior tribunal. *Schofield v. Melton,* 1933 OK 447, 166 Okla. 64, 25 P.2d 279, 282. Facts are a part of a claim and they should thus be presented in the first instance to the trial court for its consideration in issuing its order. See the discussion of this principle in *Crest Infiniti, II, LP v. Swinton,* 2007 OK 77, n. 8, 174 P.3d 996, 1001. As we have explained herein, facts may be presented to a

District Court for adjudication of a challenge to *in personam* jurisdiction by special appearance without waiving that challenge.

33. Appendix to Respondent's Verified Response to Petitioner's Application to Assume Original Jurisdiction, etc, No. 106,432, Nov. 10, 2008, Exhibit 3.

34. Appendix to Respondent's Verified Response to Petitioner's Application to Assume Original Jurisdiction, etc, No. 106,432, Nov. 10, 2008, Exhibit 4.

35. Appendix to Petitioner's Brief in Support of Application to Assume Original Jurisdiction, etc., No. 106,432, Oct. 21, 2008, Exhibit F.

36. Appendix to Respondent's Verified Response to Petitioner's Application to Assume Original Jurisdiction, etc, No. 106,432, Nov. 10, 2008, Exhibit 3; Appendix to Petitioner's Brief in Support of Application, etc, No. 105,611, Feb. 27, 2008, Exhibit B.

37. *Celli v. Shoell,* 40 F.3d 324, 327 (10th Cir. 1994) ("Federal courts are courts of limited jurisdiction, and the presumption is that they lack jurisdiction unless and until a plaintiff pleads sufficient facts to establish it.").

38. *Doe v. Holy See,* 557 F.3d 1066, 1073–1074, (9th Cir.2009) (notice-pleading standard applied to jurisdiction); *Kanter v. Barella,* 489 F.3d 170,

like the Federal Rule 8 jurisdictional pleading requirement in federal courts, prior to 1969 an Oklahoma District Court was considered to be a court of *general* jurisdiction, and a plaintiff was not required to plead in his or her petition the jurisdictional facts necessary to support a judgment of an Oklahoma District Court. *Howard v. Duncan*, 1933 OK 256, 163 Okla. 142, 21 P.2d 489, 490–491. Since 1969 Oklahoma District Courts are not courts of *mere* general jurisdiction, but they exercise unlimited original jurisdiction of all justiciable matters, except as otherwise provided by the Constitution. *Jernigan v. Jernigan*, 2006 OK 22, n. 16, 138 P.3d 539, 545. Thus, specific and detailed allegations of each and every relevant jurisdictional fact need not be pled on the face of a petition invoking this unlimited jurisdiction of an Oklahoma District Court.

▮▮▮ ¶ 17 Various methods may be used to place facts before a trial court to receive judicial recognition, and Professor Fraser has stated that "... if a long-arm statute must be used to serve the defendant the plaintiff should plead facts that show such service is proper." George B. Fraser, *The Petition Under the New Pleading Code*, 38 Okla. L.Rev. 245, 246 (1985). That showing of proper service is based upon a *notice-pleading standard*, for the facts necessary to support *in personam* jurisdiction must appear *of record, not necessarily on the face of the petition itself*.[39] For example, we have explained that when a non-resident defendant challenges *in personam* jurisdiction, the facts in support of such jurisdiction must appear on the face of the trial court record, and the plaintiff, the party asserting that such jurisdiction exists, has the burden of placing those facts before the trial court in the proper form for adjudication.[40] Professor Fraser also stated that the pleading requirements for an Oklahoma petition were not designed to impose more exacting procedural burdens than those imposed by the federal rules; rather, the Oklahoma pleading requirements were modeled after the federal rules. 38 Okla. L.Rev. at 245. Oklahoma pleading requirements for the petition, like their similar federal counterparts, impose a notice-pleading standard in accordance with which *a plaintiff's petition need only give fair notice of the plaintiff's claim and the grounds upon which it rests.* *Gens v. Casady School*, 2008 OK 5, ¶ 9, 177 P.3d 565, 569. This Court has explained in various contexts that Due Process may require a plaintiff to allege and show on the face of the trial court *record* certain facts, or the adjudication of certain facts.[41] Due Process does not require that a plaintiff plead in the petition each and every necessary fact in support of *in personam* jurisdiction and thereby prevent a plaintiff from raising by amended petition, or some other post-petition method, facts in addition to those asserted by petition, and which support long-arm jurisdiction and

175 (3d Cir.2007) (notice-pleading standard stated and Fed.R.Civ.P. 8(a) quoted); *Carpenter v. Williams*, 86 F.3d 1015, 1016 (10th Cir.1996) (court observed that the complaint in that case did not satisfy Fed.R.Civ.P. 8(a)(1) and the requirement that a pleading shall include "a short and plain statement of the grounds upon which the court's jurisdiction depends.").

39. If every fact necessary for long-arm jurisdiction were required to be listed in the petition then the federal court jurisprudence would be inexplicable since it distinguishes a facial challenge to a petition accepting allegations as true and a factual challenge contesting facts. *See*, e.g., *U.S. v. Rodriguez–Aguirre*, 264 F.3d 1195, 1203 (10th Cir.2001) (a party may make a *facial* challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint).

40. *Colton v. Huntleigh USA Corp.*, 2005 OK 46, ¶ 10, 121 P.3d 1070, 1073 ("The burden of proof as to any particular fact rests upon the party asserting such fact."). We have stated that the plaintiff has the burden of showing facts necessary to support *in personam* jurisdiction of a non-resident defendant when such jurisdiction is challenged. *Gilbert v. Security Finance Corp., supra; Conoco, Inc. v. Agrico Chemical Co., supra; Union Bank v. Ferris, supra; Roberts v. Jack Richards Aircraft Co., supra; Crescent Corp. v. Martin, supra;* at note 15.

41. For example, the Court has explained that publication notice is based upon a trial court record showing due diligence. *Blackgold Exploration Co. Ltd. v. First Fed. Sav. and Loan Ass'n of Elk City*, 1990 OK 134, 803 P.2d 1138, 1142 (factual support for the due-diligence statement required by *Bomford v. Socony Mobil Oil Co.*, 1968 OK 43, 440 P.2d 713, must appear on the record, although those facts need not necessarily be set forth in the affidavit, they must be before the trial court in some form to "be considered in light of the circumstances.").

are then made of record in the trial court proceeding.[42] The petition should contain facts which give fair notice of the plaintiff's assertion of *in personam* jurisdiction and the factual grounds upon which *in personam* jurisdiction may be asserted as to the non-resident defendant.

■■ ¶ 18 In summary, when a plaintiff's petition invokes a court's long-arm jurisdiction[43] a defendant may use a timely motion to dismiss to challenge the facial sufficiency of the petition's allegations and assert that they fail to give fair notice of the factual basis for long-arm jurisdiction, a defendant may use a timely motion to dismiss with attached affidavits to challenge the petition by raising facts not of record on the face of the petition, and a plaintiff may respond to the motion with affidavits in support of the *in personam* jurisdiction.[44] We need not discuss other trial court procedures because Husband's filings challenged the facial sufficiency of the petition and did not raise any extra-record fact by affidavit, pleading, or form of evidence.[45]

■■ ¶ 19 In supervisory review of a trial court's order adjudicating a motion to dismiss challenging the facial sufficiency of a petition asserting long-arm jurisdiction, we must determine if the allegations of the petition give fair notice of the factual basis for long-arm jurisdiction sufficient to comply

with Due Process. Is Wife's petition *facially* sufficient to give Husband notice of the factual basis for her assertion of long-arm jurisdiction? We hold that the petition is *facially sufficient*, for reasons we now explain.

### B. *In Personam* Jurisdiction

¶ 20 The trial court relied on *Taylor v. Taylor*, 1985 OK CIV APP 26, 709 P.2d 707 (released for publication by order of the Court of Civil Appeals) as authority to proceed with the petition for divorce and for a determination of child custody. In *Taylor* the appellate court reversed the trial court's award of support alimony, child support, costs, fees and a judgment for arrearages because the trial court lacked *in personam* jurisdiction. In *Taylor* the appellate court also concluded that although *in personam* jurisdiction was lacking the trial court possessed jurisdiction to determine the request for divorce and child custody. The *Taylor* court did not explain the trial court's jurisdictional basis for adjudicating divorce and child custody, and appears to have applied the concept of divisible divorce.

■■ ¶ 21 In our present case, a Missouri court previously directed Husband to litigate the divorce and all other issues in Oklahoma instead of in Husband's Missouri divorce proceeding, and the Oklahoma trial court relied upon the orders of the Missouri court for

---

42. The Due Process Clause does not by itself mandate any particular form of procedure. *In re A.M.*, 2000 OK 82, ¶ 9, 13 P.3d 484, 487. Due Process requires notice reasonably calculated under all the circumstances to inform the interested parties of the action's pendency and to afford them a full and fair opportunity to present their objections. *Vance v. Federal Nat. Mortg. Ass'n*, 1999 OK 73, ¶ 11, 988 P.2d 1275, 1280; *PFL Life Ins. Co. v. Franklin*, 1998 OK 32, n. 5, 9, 958 P.2d 156, 162. Husband makes no Due Process challenge to Oklahoma's procedure, and we need not adjudicate the propriety of applying a notice-pleading standard to facts relating to long-arm jurisdiction.

43. The phrase "long-arm jurisdiction" is used descriptively merely as a reference to the factual circumstance of a plaintiff invoking an Oklahoma court's *in personam* jurisdiction to be exercised over a non-resident defendant. *See Glidewell Motors, Inc. v. Pate*, 1978 OK 46, 577 P.2d 1290, 1291 (discussed "long-arm" statutes and *in personam* jurisdiction).

44. Of course, conflicting or competing affidavits may not be used to adjudicate those facts, and would show the necessity of adjudicating contested material jurisdictional facts by the trier of fact. *See Crest Infiniti, II, LP v. Swinton*, 2007 OK 77, n. 12–13, 174 P.3d 996, 1002.

45. The adjudication of *in personam* jurisdiction is often a fact-specific determination and a trial court thus often makes the adjudication upon facts in affidavits, testimony, or other forms of evidence not appearing on the face of plaintiff's petition. *See, e.g., Warlick v. Stevenson*, 1977 OK 217, 571 P.2d 843, 845–846 (testimony considered to adjudicate special appearance, motion to quash, and objection to *in personam* jurisdiction); *Kenitex Corp. v. Coryell*, 1960 OK 104, 352 P.2d 894, 895 (defendant's special appearance, motion to quash, and plea to venue and jurisdiction were supported by an affidavit, and when plaintiff did not offer counter-affidavit or evidence the uncontroverted affidavit of defendant was taken as true).

exercising jurisdiction to adjudicate the personal support obligations of Husband. Wife seeks a divorce and child custody as well as a decree imposing personal monetary obligations against Husband. We are not presented with the circumstance of one spouse seeking a divisible divorce or seeking to impose personal obligations after a divisible divorce has been granted,[46] and we need not address the status of divisible divorce or the power of the trial court to adjudicate child custody in Oklahoma when a non-resident spouse/parent objects to the *in personam* jurisdiction of an Oklahoma court.[47] Additionally, the issue before us today does *not* involve the correctness of *Taylor v. Taylor, supra,* and we express no opinion on whether *Taylor* is correct or incorrect. In summary, the prohibition issue before us *as pled in the trial court and briefed by the parties before us* involves *in personam* jurisdiction raised by a motion to dismiss challenging the *facial sufficiency* of pleadings *apart from* the effect of the Missouri court's orders, *apart from* any evidence the parties may or may not present at some future time in the trial court, and *apart from* the application of *Taylor or any other matrimonial case* which separates claims for the basis of *in personam* jurisdiction analysis.

▇▇▇▇▇ ¶ 22 The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution limits the power of a state court to render a valid personal judgment against a non-resident defendant. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Kulko*

*v. California Superior Court,* 436 U.S. 84, 91–92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978). The non-resident defendant must have minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Kulko v. California Superior Court,* 436 U.S. at 92, 98 S.Ct. 1690; *Gilbert v. Security Finance Corp. of Okla., Inc.,* 2006 OK 58, ¶ 16, 152 P.3d 165, 173, Further, "[l]ike any standard that requires a determination of 'reasonableness' the 'minimum contacts' test ... is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko,* 436 U.S. at 92, 98 S.Ct. 1690. Additionally, an essential criterion in all cases is whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require the defendant to conduct a defense in that forum and the defendant should reasonably anticipate being haled into court in that forum. *Kulko,* 436 U.S. at 92, 98 S.Ct. 1690; *Gilbert,* 2006 OK 58, at ¶ 16, 152 P.3d 165.

¶ 23 In the present cases, Husband relies on the fact of his physical presence in Missouri. He also relies upon *Kulko supra,* and *World–Wide Volkswagen Corp., supra,* for the proposition that it would be unfair for him to defend his divorce and support obligations in Oklahoma. Wife focuses on Husband's activities in Missouri that, according to her unrefuted pleadings, forced or directed her to move to Oklahoma. She distinguishes *Kulko* and her *pleadings allege* that

---

**46.** In the absence of *in personam* jurisdiction over one spouse an *ex parte* divisible divorce decree may change the marital status of appearing and non-appearing spouses, but a divisible divorce is ineffectual to alter economic interests and certain other legal interests of the spouses. *Shipp v. Shipp,* 1963 OK 133, 383 P.2d 30, 32 (describing divisible divorce); *Hudson v. Hudson,* 52 Cal.2d 735, 344 P.2d 295 (1959) (Justice Traynor's opinion for the court explained divisible divorce and that an *ex parte* divorce in Idaho did not foreclose a subsequent proceeding in California for alimony). *See also* Ann Laquer Estin, *Family Law Federalism: Divorce and the Constitution,* 16 Wm. & Mary Bill Rts. J. 381, 410–419 (2007) (divisible divorce discussed).

**47.** Wife has not briefed or provided supporting authority for the proposition that the Missouri

court orders, by themselves, are sufficient for an Oklahoma court to exercise *in personam* jurisdiction over Husband, and we need not reach the issue of the constitutional validity of an *ex parte* divorce and discuss the degree of constitutional protection afforded to marital and custodial rights which are not usually characterized as personal obligations. *Fent v. Contingency Review Bd.,* 2007 OK 27, ¶¶ 22, 23, 163 P.3d 512, 524–525 (while exercising original jurisdiction the Court explained that it need not consider challenges which lacked convincing argument firmly supported by legal authority, and that the Court may not be forced to become an active advocate for the party whose failure to brief or argue has produced a total intellectual vacuum for that party's asserted position).

her presence in Oklahoma did not result from her unilateral conduct and Husband's mere acquiescence, but from purposeful conduct by Husband.

¶ 24 *Kulko* was decided by the Court in 1978, during a twenty-five year period in which the Court's due process jurisprudence in the area of judicial jurisdiction was evolving substantially. In *Quill Corporation v. North Dakota*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), a unanimous Court observed that "our due process jurisprudence has evolved substantially in the 25 years since *[National] Bellas Hess[ v. Dept. of Revenue*, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967) ], particularly in the area of judicial jurisdiction." *Id.* 504 U.S. at 307, 112 S.Ct. 1904. In *Quill* the Court determined that due process did not require a corporation's physical presence in a state as a condition for the state to tax the corporation. *Id.* 504 U.S. at 308, 112 S.Ct. 1904. In *Quill* the Court focused on those elements also used in *Kulko* which involved the non-resident's conduct in purposefully availing himself or herself of benefits received from the forum state. *Id.* 504 U.S. at 307, 112 S.Ct. 1904, explaining *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Husband's physical presence in Missouri and not Oklahoma is insufficient, by itself, to negate *in personam* jurisdiction based upon a minimum contacts test that could satisfy the High Court's due process jurisprudence in *Kulko, Quill, Burger King*, and other opinions of that Court.

 ¶ 25 Opinions from the U.S. Supreme Court have explained in non-matrimonial disputes that when a non-resident purposefully directs activity in a state, the activity may be sufficient for the state to exercise *in personam* jurisdiction over the non-resident.[48] Phrased another way, "there must be some act by which the defendant purposefully avails himself of the privilege of conducting activity within the forum state." *Yery v. Yery*, 1981 OK 46, 629 P.2d 357, 361–362. In *Kulko* the Court explained that " 'The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.... [I]t is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State....' " *Kulko v. California Superior Court*, 436 U.S. at 93–94, 98 S.Ct. 1690, quoting *Hanson v. Denckla*, 357 U.S. 235, 246, 78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283 (1958). In *Kulko* the *unilateral* activity of the mother and child who left the marital domicile was again emphasized by the Court's observation that "It is appellant who has remained in the State of the marital domicile, whereas it is appellee who has moved across the continent." *Id.* 436 U.S. at 97, 98 S.Ct. 1690. The characterization of their conduct as unilateral was based upon a legal conclusion that when a non-resident father consented to his daughter living in California and sent her there he did not thereby commit a "purposeful act" availing himself of the privilege of conducting activities within California. *Id.* 436 U.S. at 94, 98 S.Ct. 1690. The Supreme Court stated that a "father who agrees, in the interests of family harmony and his children's preferences, to allow them to spend more time in California than was required under a separation agreement can hardly be said to have 'purposefully availed himself' of the 'benefits and protections' of California's laws." *Kulko*, 436 U.S. at 94, 98 S.Ct. 1690. The Court also explained that to find personal

---

**48.** *See, e.g., Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) (a state court may exercise jurisdiction over a non-resident for the purpose of taxation when the non-resident "purposefully directed" certain activities in the forum state); *Van Cauwenberghe v. Biard*, 486 U.S. 517, 526, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988); ("In the context of due process restrictions on the exercise of personal jurisdiction, this Court has recognized that the individual interest protected is in 'not being subject to the binding judgments of a forum with which [the defendant] has established no meaningful contacts, ties, or relations.' "); *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (Part II–A of Justice O'Connor's opinion, joined by Rehnquist, C.J., Powell, and Scalia, JJ) ("minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' ").

jurisdiction in a State on the *mere* basis of the mother's residence "would discourage parents from entering into reasonable visitation agreements..." and that such jurisdiction "could arbitrarily subject one parent to suit in any State of the Union where the other parent chose to spend time while having custody of their offspring pursuant to a separation agreement." *Id.* 436 U.S. at 93, 98 S.Ct. 1690. In *Gullo v. Gullo,* 2003 OK CIV APP 61, 74 P.3d 612 (released for publication by order of the Court of Civil Appeals), our Court of Civil Appeals observed that according to *Kulko* a parent's mere acquiescence, or agreement, in one state for a child's residence in a second state does not satisfy the "effects test;" *i.e.,* the acquiescence does not thereby cause an "effect" in the second state justifying *in personam* jurisdiction. *Id.* at ¶¶ 14–16, 74 P.3d at 626.[49]

¶ 26 In our case, Wife points to Oklahoma's version of the Uniform Interstate Family Support Act (U.I.F.S.A.), 43 O.S.Supp. 2004 § 601–101, *et seq.,* specifically § 601–201(A)(5) which states a basis for jurisdiction over a non-resident when "The child resides in this state as a result of the acts or directives of the individual." [50] This language was considered by the Colorado Supreme Court in *In re Marriage of Malwitz,* 99 P.3d 56, 58–59 (Colo.2004), holding as follows:

We granted certiorari to address whether the trial court had jurisdiction to order child support under section 14–5–201(5) based on the Defendant's acts of domestic violence, which caused Malwitz to flee to Colorado where the child was born and now resides with Malwitz. *Accepting the trial court's factual findings regarding the Defendant's abuse and harassment of Malwitz, we find that the Defendant's ac-*

---

**49.** Due to our disposition of the cases herein we need not discuss the extent to which the "effects test" is, or is not, appropriate for matrimonial litigation. *See, e.g., Kulko,* 436 U.S. at 96–97, 98 S.Ct. 1690 (Court discussed the origin of the effects test in non-matrimonial jurisprudence, indicated that the test may be inappropriate to matrimonial litigation, and upon application of the facts therein found the test to be insufficient to show *in personam* jurisdiction over the non-resident).

**50.** 43 O.S.Supp.2004 § 601–201(A)(5) states that "(A). In a proceeding to establish or enforce a

*tions were sufficient to constitute "acts or directives" that caused Malwitz to flee Texas for Colorado within the meaning of section 14–5–201(5). We further find that, under these circumstances, the exercise of personal jurisdiction over the Defendant is consistent with due process.* We therefore hold that the trial court had personal jurisdiction over the Defendant for purposes of entering a child support order.

*Id.* 99 P.3d at 59 (emphasis added).

In *Malwitz* acts of abuse and harassment occurred in the State of Texas, the husband made harassing phone calls to his wife's father in Colorado, and these phone calls were for the purpose of "further harassing and intimidating" his wife and her family. *Id.* 99 P.3d at 58, 61. The Colorado court explained that the facts therein were similar to those in *Franklin v. Virginia,* 27 Va.App. 136, 497 S.E.2d 881 (1998), where *in personam* jurisdiction was found to exist:

We find that, like the family in *Franklin,* the pregnant Malwitz and her daughter were effectively forced to flee Texas for Colorado by the affirmative acts of the Defendant. Although the Defendant did not specifically direct Malwitz to leave, his persistent abuse and harassment left Malwitz with little choice but to leave Texas and seek safety near her father's home in Colorado. *See Id.* (noting that the mother "made no such choice" to leave Africa, but was forced to Virginia because "[t]hey had to go somewhere").

*Malwitz,* 99 P.3d at 60–61.

The Colorado court, noting that the husband knew that his wife's family resided in Colorado, concluded that "the Defendant knew or should have known that his actions would

---

support order or to determine parentage, a tribunal of this state may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if: ... 5. The child resides in this state as a result of the acts or directives of the individual; ...."

This basis of jurisdiction resembles *Hines v. Clendenning,* 1970 OK 28, 465 P.2d 460, 463, where this Court observed that the defendant "sent his wife back to Oklahoma, her home state and the home of her parents, and refused to permit her to return to him in California ...."

drive Malwitz to her father's home in Colorado." *Id.* 99 P.3d at 61.

¶ 27 In *Malwitz* the court noted that the abusive husband knew that the wife's only family ties were in Colorado, and that the husband should have foreseen that the abused wife would flee to the protection of her family. *Malwitz*, 99 P.3d at 59. The court also noted that very little time passed between the harassment and abuse and the subsequent relocation of the spouse from Texas to Colorado. *Id.* 93 P.3d at 61.[51] Threats of abuse and harassment, abused spouse's immediate family located in a different state, the foreseeability on the part of the abusing spouse that the abused spouse would flee to that family for support and a place to live, and the timeliness of the move to Colorado in relation to the abuse were factors considered by the Colorado court.

██ ¶ 28 When we examine statutes there is a presumption that they are constitutional and we construe them, if at all possible, to be consistent with constitutional provisions. *In re Baby Girl L.*, 2002 OK 9, ¶ 29, 51 P.3d 544, 556. Thus, we read the "acts or directives" language in § 601–201(A)(5) as no broader in scope than what due process allows.[52] Does spouse and child abuse occurring in one state constitute "acts or directives" pursuant to § 601–201(A)(5) whereby the abusing spouse is purposefully availing himself or herself of conducting activity in another state to which the abused spouse and child flee? In *Kulko* the Court observed that the "minimum contacts" test of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) "is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present ... [and] this determination is one in which few answers will be written 'in black and white'...." *Kulko v. California Superior Court,* 436 U.S. at 92, 98 S.Ct. 1690. Spousal abuse cannot, by itself, serve as a mechanically applied test to satisfy the due process of law.

¶ 29 We must also consider the "fair play and substantial justice" test. Due process is satisfied if a non-resident defendant has "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[53] In determining fairness to the non-resident spouse to litigate child support in the forum, the U.S. Supreme Court has considered the reasonable expectations of the non-resident and the personal or commercial benefits received by the non-resident from the child's presence in the forum state.

██ ¶ 30 Here, could Husband reasonably anticipate being haled before a court in Oklahoma? The verified and uncontested allegations in Wife's pleadings are that Husband and Wife discussed separation or divorce and Husband refused to let Wife stay in their marital home in Missouri with their four-month-old child. Additionally, that Wife, with no economic means, had no choice but to move with their child into her parents' home in Oklahoma, and that Husband knew

---

**51.** The Colorado court discussed opinions from two other jurisdiction where the spouse did not adequately show that the move to a different state was in response to abuse because of the timing of the move relative to the alleged abuse or request for support. *Malwitz*, 99 P.3d at 59–60, explaining *McNabb ex rel. Foshee v. McNabb*, 31 Kan.App.2d 398, 65 P.3d 1068 (2003) (alleged abuse more than one year prior to the move "did not cause [the mother] and child to flee Virginia for Kansas"); *Windsor v. Windsor*, 45 Mass.App. Ct. 650, 700 N.E.2d 838 (1998) (personal jurisdiction over non-resident father was inappropriate where "mother left the father in Florida in June 1977, gave birth to their son in Massachusetts in September 1977, and filed a complaint for divorce, including a demand for child support, nearly twenty years later, in June 1995.").

**52.** Our Court of Civil Appeals has concluded that § 601–201 must be construed in harmony with due process and *Kulko v. California Superior Court, supra.* See *Gullo v. Gullo,* 2003 OK CIV APP 61, 74 P.3d 612, released for publication by order of the Court of Civil Appeals.

**53.** *Gilbert v. Security Finance Corp. of Okla., Inc.,* 2006 OK 58, ¶ 16, n. 11, 152 P.3d 165, 173, quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) and *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

that this was her only available choice for economic support and a place to live with the assistance of her parents. She alleges that before her move to Oklahoma Husband agreed with her assisted move to Oklahoma with the child and her furniture. She also specifically alleges that Husband knew that her parents would come to Missouri to move her and their child to Oklahoma in consequence of his conduct towards Wife, and he agreed with the location to which she and the child would move. She also alleges being fearful of Husband due to his verbal abuse, threats against her person, his erratic behavior, including D.U.I. arrests, alcoholism, an instance of his breaking a locked door to gain access to her, and an instance of his falling down stairs while carrying a child.[54] She alleges that before moving to Oklahoma she would lock herself in a room in their home for her personal safety.[55] These allegations do not go the next step and allege that Husband expressly directed Wife to bring her divorce, custody, and support action in Oklahoma, or that Husband expressly agreed to Oklahoma as a forum for the divorce. They also do not contain allegations that the nature of the alleged abuse prevented her from seeking divorce, custody, or support in Missouri. However, Wife does allege that Husband caused her to leave the marital home by refusing to allow her and the child to stay in the home. Her *allegation* is that she was given the choice of no place to live in Missouri, with no economic support in Missouri where she could file for a divorce as a Missouri resident, or the choice of moving with her child to Oklahoma to reside with her parents. Her argument is that she had no independent choice where to live, but was required to follow her Husband's agreement for her parents to move her to Oklahoma.

¶ 31 In *Malwitz*, after noting that the abused spouse was directed by the acts of the abusive spouse to live in Colorado, the court noted consequences of that conduct, including the abused spouse receiving public assistance in Colorado and thereby creating a debt. *Malwitz*, 99 P.3d at 62–63. *Malwitz* also observed that "all states share a common interest in protecting victims of domestic abuse and providing an effective means for redress for such victims." *Id.* 93 P.3d at 63. An interest to protect children and spouses that is shared in common with other forums, whether from abuse or lack of economic support, *is insufficient, by itself,* to make Oklahoma a fair forum *as to a nonresident.*[56] Wife's allegations are essentially that her parents acted as agents for her *and her husband* when they helped her move to Oklahoma, and that her move should be no different from her husband physically driving her across the state line and directing her to establish her residence with the child in Oklahoma. *Kulko* cannot be read so broadly as to allow a Missouri husband/father to create marital financial obligations in Oklahoma by purposefully causing his wife and child to live in Oklahoma, and then deny *in personam* jurisdiction in an Oklahoma proceeding brought by the wife to satisfy those obligations. Husband allegedly created the cir-

**54.** The trial court determined that it possessed jurisdiction and *after that determination* Wife filed additional material relating to Husband's criminal record for domestic assault in Missouri. Petitioner's [Wife's] Motion to Continue Hearing on Default Judgment Relief, FD–2008–983, Appendix to Respondent's Response, etc., Okla. Sup.Ct. 106,432. That Appendix also contains a medical diagnosis of the child herein and states that the child should not travel a long distance in a car due to a medical condition specified therein. The medical diagnosis statement appears in the Appendix *without any procedural context of it being raised in the trial court.* In the context of supervisory writ jurisdiction we have declined to consider a petitioner's affidavit when it was not filed with the trial court until after the trial court decision reviewed by extraordinary writ. *Crest Infiniti, II, LP v. Swinton,* 2007 OK 77, n. 8, 174 P.3d 996, 1001. Similarly, we decline to consid-

er Husband's alleged criminal record or the child's alleged medical diagnosis when the record before us fails to show that the instruments were filed in the trial court for consideration by that court when issuing its order.

**55.** Appendix to Respondent's Verified Response to Petitioner's Application to Assume Original Jurisdiction, etc, No. 106,432, Nov. 10, 2008, Exhibit 3; Appendix to Petitioner's Brief in Support of Application, etc, No. 105,611, Feb. 27, 2008, Exhibit B.

**56.** In *Kulko* the Court stated that California's substantial interests in protecting resident children and in facilitating child-support actions on behalf of those children did not make California a fair forum. *Id.* 436 U.S. at 100, 98 S.Ct. 1690.

cumstances of his wife and child living in Oklahoma without his economic support and *Kulko* cannot, as suggested by Husband, be read as requiring a non-supported wife and child to *always* seek legal relief *only* in the non-resident's state of residence.[57]

¶ 32 Although acts of child and spouse abuse in one state are insufficient, by themselves, to create *in personam* jurisdiction over a non-resident spouse in a different state, we do agree with the Supreme Court of Colorado that affiliating circumstances such as those in *Malwitz* may provide the facts necessary to show that an abusive spouse is purposefully availing himself or herself of conducting activity in the forum state by directing and controlling where the abused spouse and child reside. It is *alleged* herein that Husband directed and controlled the location of residence by agreeing to, and desiring, that location for his family, that this location is the result of Husband's physical abuse, that this location is the result of his complete and abrupt failure of both spousal and child economic support in both Husband's state of residence and the state to which he directed and compelled them to move their residence, and that he was aware that his lack of support required this specific change in residence.

¶ 33 In *Malwitz* the wife was afforded a hearing in the trial court on the issues of fact relating to the *in personam* jurisdiction of a non-resident spouse. A federal court may hold an evidentiary hearing on jurisdictional issues, *Federal Deposit Ins. Corp. v. Oaklawn Apartments, supra,* and an Oklahoma District Court must adjudicate motions raising contested issues of fact, *Crest Infiniti, II, LP v. Swinton, supra.* Our Court of Civil Appeals has concluded that contested facts related to an assertion of *in personam* jurisdiction pursuant to § 601–201 over a non-resident spouse must be adjudi-

cated by the trial court. *Gullo v. Gullo,* 2003 OK CIV APP 61, ¶¶ 18–20, 74 P.3d 612, 616–617 (released for publication by order of the Court of Civil Appeals). *The issues before us do not involve contested facts, but a motion challenging the sufficiency of the allegations in the petition, as amended.* The trial court must afford a full and fair opportunity for the parties to litigate facial attacks on pleadings as well as an opportunity for them to contest issues of fact involving *in personam* jurisdiction.

¶ 34 Notice pleading does not require Wife to catalogue in her petition each and every fact of alleged physical and economic abuse that could be used to support an evidentiary finding and conclusion that Husband's spousal/child abuse and intentional spousal economic failure caused her and her child to reside in Oklahoma. Similarly, notice pleading does not require her to catalogue in a petition every alleged fact that could be used to support her argument that Husband directed her to move to Oklahoma, and that he used Wife's parents as agents to complete the alleged plan for his family to live in Oklahoma. We are not concerned at this time with the sufficiency of the evidence to support Wife's jurisdictional arguments, but whether the District Court was correct that Wife satisfied her pleading burden *according to the record presented to us in these extraordinary writ proceedings **and** the burden of the petitioner (Husband) herein to show that Wife failed her notice-pleading burden in the District Court.* Whether Wife's *allegations* are indeed the facts present in the cases before us today is a question we may not reach in advance of the parties litigating the actual existence of such facts in the District Court.

¶ 35 The trial court's order in FD–2008–983 determined that the trial court possessed, in fact, *in personam* jurisdiction

**57.** In *Kulko* the Court also examined whether the mother could have sought legal relief in the courts of the non-resident's state. *Kulko,* 436 U.S. at 94–95, 98 S.Ct. 1690. Wife appears to indicate that her residence is now Oklahoma and Husband's arguments do not specifically admit that Wife could, as an Oklahoma resident, bring an independent action for divorce (or dissolution) and support in the State of Missouri. We

need not decide this non-briefed issue. See *Fent v. Contingency Review Bd., supra,* at note 47. *But see, Bridgeman v. Bridgeman,* 63 S.W.3d 686, 689 (Mo.App.2002) (construing Section 452.305.1(1) RSMo (2000) and stating that a proceeding for dissolution one of the parties must have been a resident of Missouri for ninety days immediately preceding the commencement of the proceeding.).

when the Husband's challenge presented only the narrower issue of the sufficiency of Wife's petition, as amended. Prohibition hereby issues (1) to prevent enforcement of the order of the District Court in FD–2008–983 which sustained a motion for reconsideration and determined jurisdiction respecting divorce and all related issues, and (2) to direct the District Court that it must provide a full and fair opportunity for parties to present any evidence on the issue of *in personam* jurisdiction for the trier of fact to determine that issue consistent with this opinion. We hold that the *allegations* of Wife's petition, as amended, in FD–2008–983 are sufficient to give notice of the grounds upon which the trial court's jurisdiction depends and the allegations thus satisfy Wife's notice-pleading burden. Thus, we grant prohibition in part, that is to prevent enforcement of the specific order challenged herein; and we also deny prohibition in part, with respect to Husband's claim that the trial court record is insufficient, according to a notice-pleading burden, to show *in personam* jurisdiction over Husband based upon the petition's allegations.

¶ 36 In summary, we conclude that *allegations* of spousal/child physical abuse and intentional spousal failure of economic support combined with allegations of a nonresident's spouse's agreement and purposeful conduct for the location of the residence of the other spouse and their child may be used pursuant to 43 O.S.Supp. 2004 § 601–201 to show *in personam* jurisdiction over a nonresident spouse/parent that is consistent with due process of law. We also conclude that in No. 105,611 Husband's extraordinary writ record is insufficient to show that *either* Wife failed to meet her notice-pleading burden in the District Court *or* that she failed to produce evidentiary facts by affidavit, or otherwise, that would justify *in personam* jurisdiction over a non-resident. We conclude in No. 106,432 that Husband failed to show that

Wife's District Court petition, as amended, was facially insufficient to give fair notice of her grounds upon which *in personam* jurisdiction allegedly rests. Original jurisdiction is assumed in both No. 105,611 and No. 106,432, the petition for a writ of prohibition is denied in No. 105, 611, and the petition for writ of prohibition is granted in part and denied in part in No. 106,432 with directions to the District Court as specified herein.

¶ 37 EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, WATT, WINCHESTER, COLBERT, REIF, JJ., Concur.

¶ 38 OPALA, KAUGER, JJ., Concur in result.

OPALA, J., concurring in result.

¶ 1 At issue and still undecided at the end of this original action is the constitutionally permissible outer limit of the Tulsa County District Court's subject-matter jurisdiction in the divorce case now pending below.

¶ 2 Upon this proceeding's conclusion the trial court must decide if its jurisdiction of the subject matter is only *in rem*, i.e. confined to adjudicating the plea for divorce and for determining the child's custody, both issues allowable in a so-called action for "divisible divorce,"[1] or may be extended to other (or to all remaining) issues incidental to the litigation for dissolution of marriage. The latter issues call for an exercise of the court's *in personam* jurisdiction over the nonresident (out-of-state) husband.

¶ 3 The trial court's decision, directed here to be made, is to deal with its personal jurisdiction's limit. Its disposition of this issue **must** conform to the XIVth Amendment's due process norms of federal jurisprudence for the constitutionally permissible outer reach of state judicial jurisdiction over a nonresident individual defendant in a suit brought for dissolution of marriage.[2] See

1. Federal constitutional due process norms stand firmly settled that in a proceeding for divorce against a nonresident defendant who was not served personally within the state both the marriage status and the custody of the children present within the court's jurisdiction may be considered as issues well within the state court's *in rem*

jurisdiction. If the first lawsuit secures only an *in rem* adjudication, a second is needed for an *in personam* adjudication of the remaining issues.

2. The due process clause of the XIVth Amendment affords protection to both individuals and corporations from having to defend lawsuits

*Kulko v. California Superior Court,* 436 U.S. 84, 98 S.Ct., 1690, 56 L.Ed.2d 132 (1978).

¶ 4 I write separately to express both my concern and fear that today's pronouncement is very likely to invite trial judges to extend Oklahoma's settled jurisprudence on judicial jurisdiction in divorce cases brought against nonresident spouses who were not personally served within the state beyond the extant due-process boundaries currently set by the U.S. Supreme Court. Pressing our law a step farther by following recent decisions of a few bold state courts would be fraught with great risk of embarrassment if the wished-for changes did not occur and a return to reality should subsequently force a hasty retreat. **I must counsel against taking an activist posture on any unsettled point of federal constitutional law.** Instead of pressing today for desired changes in the current state of the law I would much rather await further developments in the U.S. Supreme Court's jurisprudence. The risk of having to retreat later because federal law has failed to follow the anticipated course appears neither appealing nor prudent.[3]

---

brought against them in distant fora arbitrarily chosen by their advantage-seeking opponents. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

**3.** The current constitutional test a state court must meet before it may assume personal jurisdiction over a nonresident individual or foreign corporation is based on the presence of "minimum contacts". See *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The meaning of "minimum contacts" is explained in *Kulko v. Superior Court of Cal. etc.,* 98 S.Ct. at 1697, in these words:

Like any standard that requires a determination of "reasonableness," the "minimum contacts" test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present. *Hanson v. Denckla,* 357 U.S. 235, 246, 78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283 (1958). We recognize that this determination is one in which few answers will be written "in black and white. The greys are dominant and even among them the shades are innumerable."